[Cite as *Cottrell v. Cottrell*, 2013-Ohio-2397.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


ROBERT W. COTTRELL,                    :

    Plaintiff-Appellant,            :

                                :

  - vs -                            :

                                  :

KATHLEEN COTTRELL,                     :

    Defendant-Appellee.             :

               CASE NO. CA2012-10-105

               O P I N I O N
               6/10/2013



APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 10DR33517


Dan D. Weiner, 4848 Marshall Road, Kettering, Ohio 45429-5723, for plaintiff-appellant

Kathleen Shockey, P.O. Box 795, Franklin, Ohio 45005, defendant-appellee, pro se


**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Robert W. Cottrell ("Father"), appeals a decision of the Warren County Common Pleas Court, Domestic Relations Division, terminating a shared parenting plan, awarding child support, and granting custody of the parties' minor son, Alan (born June 19, 1996), to Kathleen Cottrell aka Shockley ("Mother"). Father also appeals the trial court's denial of his motion to hold Mother in contempt for violating portions of the shared parenting plan.

{¶ 2}   Father filed for divorce in March 2010 and, after a contested hearing, the trial court issued a "Decision" regarding the divorce on July 22, 2011.  In the Decision, the trial court adopted a shared parenting plan agreed to by the parties.  Although the final decree of divorce and agreed shared parenting plan were not filed until September 9, 2011, the parties began complying with the shared parenting plan in late July or early August 2011.

{¶ 3}   Pursuant to the shared parenting plan, Father and Mother were to have equal parenting time with Alan on a rotating weekly basis, from Friday at 6:00 p.m. until the following Friday at 6:00 p.m.  This plan was agreed to by the parties and was requested by Alan during an in camera interview between Alan and the trial court judge.  However, near the end of September 2011, Alan indicated that he wanted to spend all of his time with Mother and began refusing to go to Father's residence for his weekly visitation.

{¶ 4}   On December 13, 2011, Mother moved to modify the shared parenting plan and custody arrangement, seeking full custody of Alan with Father receiving the "standard" visitation of every other weekend and Wednesday evenings.  A mediator was assigned to the case and recommended Father attempt "baby steps" with Alan to repair their relationship.  Thus, Father began attempting to see Alan weekly on Wednesday evenings.  Over the course of the next 16 weeks, however, Alan refused visitation with Father on eight occasions.

{¶ 5}   On April 25, 2012, Father moved to have Mother held in contempt for violating the shared parenting plan by not forcing Alan to see Father and for otherwise interfering with Father's parenting time.  As mediation had not solved the parenting issue between the parties, hearings on Mother's motion to modify and Father's motion for contempt were held on May 9, 2012 and July 12, 2012 before a magistrate.  At the hearings, only Mother and Father were called to testify.  In addition, on May 23, 2012, the magistrate performed an in camera interview with Alan, now 16 years old, regarding his desires and concerns over parenting.  During the interview, Alan expressed a desire to reside with Mother and have no

visitation with Father.

{¶ 6} The magistrate issued a decision on July 20, 2012 recommending that the shared parenting plan be terminated, Mother be granted full custody of Alan with Father receiving visitation according to Warren County's Basic Parenting Schedule, and Father be ordered to pay monthly child support to Mother in the amount of $580.50 from the effective date of January 1, 2012. The magistrate further recommended that Mother not be held in contempt, as she "encourages Alan to visit his father and have a relationship with him" and "she has not interfered with [Father's] parenting time, nor has she attempted to 'brainwash' Alan against [Father]." Finally, the magistrate recommended that Father obtain counseling for himself and Alan in an attempt to repair their relationship.

{¶ 7} Father's objections to the magistrate's decision were overruled by the trial court and the magistrate's recommendations were adopted in full on October 1, 2012. From the trial court's decision, Father appeals, raising seven assignments of error. For ease of discussion, some of Father's assignments of error shall be addressed out of turn.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY FAILING TO FIND MOTHER IN CONTEMPT FOR INTERFERING WITH FATHER'S PARENTING TIME WITH HIS SON. SAID FINDING IS AGAINST THE MAINIFEST (SIC) WEIGHT OF THE EVIDENCE.

{¶ 10} In his first assignment of error, Father contends the trial court improperly refused to hold Mother in contempt for failing to force Alan to spend the required time with Father pursuant to the shared parenting plan.[1] Specifically, Father argues that Mother has a

---

1. Father's argument indicates a general displeasure with Mother, Alan, and the court system because Mother will not force Alan to spend time with Father and Alan refuses to spend time with Father. We note, however, that the Domestic Relations Division of the Warren County Common Pleas Court does not have the jurisdiction to compel Alan to comply with the visitation order. Rather, the Warren County Juvenile Court would be the appropriate court for such a proceeding.

responsibility to compel Alan to comply with the shared parenting plan and, as she failed to do so, she should be held in contempt.

{¶ 11} "Disobedience to court orders may be punished by contempt." *Ware v. Ware*, 12th Dist. No. CA2001-10-089, 2002 WL 336957, *1 (Mar. 4, 2002), citing R.C. 2705.02(A); *In re C.P.*, 12th Dist. No. CA2004-10-259, 2005-Ohio-3888, ¶ 13. Pursuant to R.C. 2705.02(A), contempt results "when a party before a court disregards or disobeys an order or command of judicial authority." *Spickler v. Spickler*, 7th Dist. No. 01CO52, 2003-Ohio-3553, ¶ 38. "The law surrounding contempt was created to uphold and ensure the effective administration of justice, secure the dignity of the court, and affirm the supremacy of law." *Id.*, citing *Cramer v. Petrie*, 70 Ohio St.3d 131, 133 (1994).

{¶ 12} This court will not reverse the trial court's ruling on a motion for contempt absent an abuse of discretion. *Ware* at *1, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981); *Spickler* at ¶ 40. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable, and is more than a mistake of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *Ware* at *1, citing *Dozer v. Dozer*, 88 Ohio App.3d 296, 302 (4th Dist.1993).

{¶ 13} Father argues he was denied parenting time by Mother from September 29, 2011 through January 25, 2012 including eight of 16 Wednesday visitations that were specifically recommended by a mediator. At the hearings regarding the motion for contempt and the motion to modify custody, Mother testified that, although Alan "doesn't want to go" with Father for visits, she tells him "he should go…that it is his father" and that a father and son should have a relationship. Mother stated that she and Alan have argued over the situation in the past but expressed that Alan is "more than welcome to go" to Father's home

- 4 -

"anytime he wants in [her] eyes" and that she does not "block him from going" or "discourage him from going." Mother further testified that, from September 2011 until May 2012, she recalled Father coming to her house to pick up Alan on only three different Wednesdays. On one Wednesday, Alan refused to go with Father and, though Mother encouraged Alan to go, she had to go to work and did not stay to see if Alan eventually went with Father.[2] On a different Wednesday, Father picked up Alan and the pair went out for dinner. Mother could not recall what happened on the third Wednesday.

{¶ 14} On cross-examination, Mother stated that this has been a "stressful time" in Alan's life due to a recent break-up between Alan and his girlfriend of two years. According to Mother, this break-up caused Alan's grades to slip for a time but that, generally, he was a good student and she never had any disciplinary problems with him. Mother also explained that she has discussed with Alan his need to visit Father but that she does not want to argue or punish Alan for not going. Though Mother and Alan did "have words" over his refusal to visit with Father, Mother admitted that she will not punish Alan and make him "more stressed and angry" because she does not want him to be "angry at [her] too."

{¶ 15} Father also took the stand and testified that there were several instances since September 2011 where Alan would not "even respond to" Father via text messages or phone calls and would not meet with Father for scheduled visits. Father explained that, on the occasions when Alan would see Father, Alan was usually quiet and uncomfortable for the first portion of the visit but would be "laughing and having a good time" by the end of the visit. Father went on to claim that Mother is "brainwashing" Alan into not wanting to spend time with Father.

{¶ 16} On cross-examination, however, Father admitted that it is Alan who prevents Father from seeing him, not Mother. Alan told Father that he does not often respond to

---

2. Mother is employed as a nurse and works the nightshift three days a week.

Father's text messages and phone calls because they are "not important" to Alan. When Alan does respond to Father's text messages and phone calls, Alan states that he does not want to see his father and has other plans with his friends. Father also described a situation where he went out to dinner with Alan on a Wednesday evening and, during the course of dinner, informed Alan that he wanted to take Alan to see Father's attorney, Dan Weiner, so that Weiner could ask Alan a few questions regarding parenting time and Alan's relationship with Father. Father admitted that Alan was upset about the meeting with Weiner and stated that he did not want to talk about anything with Weiner. On the drive to Mother's house after the meeting with Weiner, Father stated that Alan would not talk to him and has rarely spoken to him since. However, according to both parents' testimony at the hearing, Alan has agreed to go on vacation with Father in the near future.

{¶ 17} "The right of visitation should be denied only under extraordinary circumstances, such as the unfitness of the non-custodial parent or a showing that the visitation would cause harm." *Ware*, 2002 WL 336957 at *2, citing *Newhouse v. Toler*, 8th Dist. No. 71834, 1997 WL 723385, *4 (Nov. 20, 1997); *In re C.P.*, 2005-Ohio-3888 at ¶ 13. When a trial court establishes a visitation schedule concerning the minor child of the parties, in the absence of proof showing that visitation with one parent would cause physical or mental harm to the child, or a showing of some justification for preventing visitation, the custodial parent must do more than merely encourage the minor child to visit the non-custodial parent. *Ware* at *2; *In re C.P.* at ¶ 13. "The burden of proof is on the party contesting the visitation privileges, and absent a showing of extraordinary circumstances, the trial court may fashion any just and reasonable visitation schedule." *Id.*, citing *Pettry v. Pettry* (1984), 20 Ohio App.3d 350, 352 (8th Dist.1984).

{¶ 18} In support of his contention that the trial court erred in not holding Mother in contempt, Father directs this court's attention to its previous decision in *Ware v. Ware*, 2002

WL 336957. In *Ware*, the father of a 13-year-old girl filed a motion for contempt against the girl's mother alleging that the mother "had denied him his visitation with his daughter." *Id.* at *1. The trial court found that the mother was in contempt for failing to comply with the court's visitation order that the father have regular visitation with his daughter. *Id.* On appeal, we affirmed the trial court's finding that the mother was in contempt for failing to comply with the visitation order and do more than merely encourage the daughter to see the father. *Id.* at *2. In so holding, we determined:

> When a court establishes a visitation schedule concerning the minor children of the parties, in the absence of proof showing that visitation with the non-custodial parent would cause physical or mental harm to the children, or a showing of some justification for preventing visitation, the custodial parent *must do more than merely encourage* the minor children to visit the non-custodial parent.

(Emphasis added.) *Id.* In upholding the trial court's decision, we specifically pointed out that the mother claimed that she encouraged her daughter to see the father and punished the daughter when she refused to go by taking her phone privileges away. *Id.* at *1. Yet, the mother admitted that she knew this punishment was ineffective on the daughter. *Id.* at *2. Furthermore, we noted that the mother's "actions at times [spoke] louder than her words," when the mother reprimanded the daughter for wanting to go skating with friends instead of visiting with her father but then allowed the daughter to go skating anyway. *Id.* at *1.

{¶ 19} At first blush, this case may appear similar to *Ware*. However, a closer examination reveals important distinguishing characteristics between the two cases. First, this case involves an older and, therefore, more independent child. Alan was 15-16 years old during the time period involved herein while the daughter in *Ware* was 13 years old. Second, Mother brought the matter to the attention of the trial court in short order by filing a motion to modify custody rather than waiting for the matter to first be brought to the trial court's attention with the filing of a contempt motion by Father, as occurred in *Ware*. Third, Father's

extreme measures, i.e., humiliating Alan in front of his girlfriend and tricking/forcing Alan to speak with Weiner against Alan's wishes and in contravention of the provisions of the shared parenting plan that the parties not involve Alan in the divorce, alienated Alan from Father and caused Alan considerable stress which could lead to mental harm. Last, Father's practice of addressing visitation issues directly with Alan as opposed to Mother was a de facto acquiescence by Father that Alan be the final arbiter of visitation matters.

{¶ 20} Furthermore, we note that Father relies heavily on the language of *Ware* that a custodial parent may be found in contempt if he or she does not "do more than merely encourage" a minor child to visit the non-custodial parent. *Id.* at *2. Yet, Father ignores the other language of *Ware* that a custodial parent must do more than merely encourage visitation unless there is (1) a "showing that visitation with the non-custodial parent would cause physical or mental harm" to the child, or (2) a "showing of some justification for preventing visitation." *Id.* Despite appellant's claims, *Ware* does not stand for the proposition that a custodial parent's efforts to comply with a visitation order are to be viewed in isolation from the surrounding circumstances in determining whether the parent has violated the order.

{¶ 21} We find that this case is factually distinguishable from *Ware* and legally consistent with it based upon the evidence that Alan may have suffered mental harm due to visitation with Father and that there was some justification for preventing visitation between Alan and Father pending counseling. Thus, upon an application of the abuse of discretion standard of review to the facts and circumstances of this particular case, we find no error in the trial court's refusal to find Mother in contempt for failing to comply with the shared parenting plan.

{¶ 22} Therefore, we find that the trial court did not abuse its discretion in refusing to hold Mother in contempt and such a decision was not against the manifest weight of the

evidence. Accordingly, Father's first assignment of error is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT ERRED BY FAILING TO FIND MOTHER IN CONTEMPT FOR VIOLATING THE TERMS OF THE SHARED PARENTING DECREE [AND] SAID FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 25} In his second assignment of error, Father contends the trial court erred by not holding Mother in contempt for failing to comply with the shared parenting plan in a variety of ways. Specifically, Father contends Mother violated the following provisions of the shared parenting plan:

> (1)   The parties shall have parenting time with the child on a rotating basis on alternate weeks from Friday at 6:00 P.M. until the following Friday at 6:00 P.M.
>
> (2) Mother and Father shall work with each other to accommodate their respective schedules and those of the child, keeping each other informed of future plans which might impact the times the child is with the other parent. Each parent shall have the right of first refusal if either party is unavailable for more than four hours.[3] The Court expects neither party to interfere with the parenting time rights. Further gamesmanship between the parties must end.
>
> (3)   Each party shall be responsible for the discipline of the minor child during the time that the child is with that parent. The parties shall also continue to consult concerning the problems of discipline over the minor child so as to best coordinate their efforts in raising said child.
>
> (4)   The parents agree that it is inappropriate to involve the child in the divorce or to discuss financial matters with the child. Neither parent shall do this.
>
> (5)   This Plan may be modified in writing, and agreed upon and signed by both parties. The parties, if they cannot agree, shall engage in mediation to resolve any disputes that arise and shall share costs of mediation equally before filing any motion in court to modify this plan. This Plan can then be modified by court

---

3. Father claims that, as Mother worked the nightshift three nights a week and was away from home for eight hours per shift, he should have been given the opportunity to have Alan on these nights.

order upon application of either party, if the Court finds the modification to be in the best interests of the child.

{¶ 26} "It is certainly true that a separation agreement is a contract and courts generally have no authority to rewrite or otherwise construe unambiguous terms contained within a contract." *Spickler*, 2003-Ohio-3553 at ¶ 25, citing *Forstner v. Forstner*, 68 Ohio App.3d 367, 372 (11th Dist.1990). It is also true in this case that both Mother and Father do not communicate with each other regarding Alan and parenting time, that Father has not received his scheduled weekly visitation with Alan, and that Mother failed to seek mediation prior to filing her motion to modify custody. Based on the record, however, we find that the trial court did not err in refusing to find Mother in contempt.

{¶ 27} As stated above, "[w]hen reviewing a finding of contempt, an appellate court must apply an abuse of discretion standard." *Spickler*, at ¶ 40. R.C. 2705.02(A) provides that a person *may* be held in contempt for "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer." A trial court "may exercise its powers of contempt to punish any party over whom it has jurisdiction by virtue of the original divorce decree when that party violates the decree." *Spickler* at ¶ 43. "This power rests exclusively with the trial court," as it "is in the best position to determine how to fairly administer and enforce its own orders." *Id.*

{¶ 28} Father's argument implies that the trial court must undertake contempt proceedings whenever one party complains that another party has violated a court order. This is simply not the case. *See id.* In this regard, it would be more appropriate that Mother's motion to modify custody be subject to dismissal for her failure to first seek mediation or be stayed pending mediation rather than holding Mother in contempt for filing the motion. In essence, the trial court did stay proceedings upon Mother's motion while Mother and Father attempted to mediate the custody dispute. Therefore, Father was not

prejudiced by Mother's failure to seek mediation before moving to modify.

{¶ 29} Based upon the foregoing, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in refusing to find Mother in contempt for violating the shared parenting plan and that said decision was not against the manifest weight of the evidence. Accordingly, Father's second assignment of error is overruled.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE TRIAL COURT ERRED AS A MATER (SIC) OF LAW AND/OR ABUSED ITS DISCRETION BY TERMINATING THE SHARED PARENTING DECREE AND AWARDING SOLE CUSTODY TO MOTHER AND LIMITING FATHER'S PARENTING RIGHTS. SAID JUDGMENT IS NOT TO ALAN'S BEST INTEREST AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 32} In his fourth assignment of error, Father contends the trial court's decision is not in the best interest of the child, as it (1) provides 16-year-old Alan the "final authority" over whether he will see his father; (2) allows Alan to disobey a court order and condones his "lack of respect for the judicial system"; and (3) allows Mother to have sole custody of Alan while completely excluding Father from Alan's life. Essentially, Father argues that the trial court abused its discretion by not properly considering all of the factors set forth in R.C. 3109.04(F)(1) but, instead, relying exclusively on the wishes and concerns of Alan. Father further argues the trial court's best interest determination is against the manifest weight of the evidence.

**Best Interest of the Child**

{¶ 33} First, "we acknowledge that 'the power of the trial court to exercise discretion is peculiarly important in proceedings involving the custody and welfare of children.'" *Forney v. Forney*, 12th Dist. No. CA2011-08-057, 2012-Ohio-3427, ¶ 12, citing *Kenney v. Kenney*, 12th Dist. No. CA2003-07-078, 2004-Ohio-3912, ¶ 6. "The discretion a trial court enjoys in

custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned." *Id.*; *Kenney* at ¶ 6; *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Therefore, the trial court's determinations shall be reviewed under an abuse of discretion standard. *Forney* at ¶ 12. As stated above, the term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore,* 5 Ohio St.3d at 219.

{¶ 34} "In reviewing a custody determination, an appellate court must 'review the record to determine whether there is any evidence in support of the prevailing party.'" *Sallee v. Sallee*, 142 Ohio App.3d 366, 370 (12th Dist.2001), citing *Ross v. Ross*, 64 Ohio St.2d 203, 206 (1980). "While reviewing the record, the appellate court must keep in mind that the trial court is better equipped to examine and weigh the evidence and to make decisions concerning custody[.]" *Sallee* at 370; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶ 35} In determining whether a modification of custody is warranted, a court must follow R.C. 3109.04(E)(1)(a), which provides, in pertinent part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, * * * and that the modification is necessary to serve the best interest of the child.

In applying these standards, the trial court shall retain the residential parent designated in the prior decree unless a modification is in the child's best interest and the harm likely to be caused by the change of environment is outweighed by the advantages of the change to the child. R.C. 3109.04(E)(1)(a)(iii); *Forney* at ¶ 13; *Valentine v. Valentine*, 12th Dist. No. CA2004-12-314, 2005-Ohio-6163, ¶ 6.

{¶ 36} In this case, Father's arguments relate solely to the trial court's best interest

determination and do not address the change in circumstances portion of R.C. 3109.04(E)(1)(a). Therefore, our review of the record shall focus only upon the trial court's ruling regarding what is in Alan's best interest.

{¶ 37} "According to R.C. 3109.04(E)(1)(a), once a change in circumstances has been established, the trial court can modify custody only if 'the modification is necessary to serve the best interest of the child.'" *Forney* at ¶ 23, citing *In re R.A.S.*, 12th Dist. No. CA2011-09-102, 2012-Ohio-2260, ¶ 30. In order to determine the best interest of a child, R.C. 3109.04(F)(1) requires the trial court consider all relevant factors. These factors include, but are not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child

- 13 -

being an abused child or a neglected child * * *;

> (i)    Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
>
> (j)    Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a)-(j). Furthermore, in determining whether shared parenting is in the best interest of the child, the trial court shall also consider additional factors including, but not limited to:

> (a)    The ability of the parents to cooperate and make decisions jointly, with respect to the [child];
>
> (b)    The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
>
> (c)    Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
>
> (d)    The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
>
> (e)    The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2).

{¶ 38} A review of the record indicates that the trial court considered all of the relevant factors enumerated in R.C. 3109.04(F)(1) and (2) before awarding sole custody of Alan to Mother and granting Father visitation. The trial court heard testimony that both parents desire to have visitation with Alan. Father sought to continue the alternating week visitation while Mother sought to be named residential parent with Father receiving "standard" visitation. R.C. 3109.04(F)(1)(a). Evidence also revealed that Alan desires to live fulltime with Mother and does not wish to see Father on a regular basis. R.C. 3109.04(F)(1)(b).

Further, evidence at the hearing established that Father and Mother live within walking distance of each other and that, at either residence, Alan would be able to attend the same school and maintain his group of friends. R.C. 3109.04(F)(1)(d) and (j); R.C. 2109.03(F)(2)(d).

{¶ 39} In addition, evidence revealed that the parties do not communicate well generally and rarely communicate at all regarding Alan. Specifically, Father testified that when Alan's school report cards revealed that his grades were slipping, Father sent the reports home with Alan or placed them in Mother's mailbox and that Father never spoke with Mother about Alan's grades. R.C. 3109.04(F)(1)(f); R.C. 2109.03(F)(2)(a).

{¶ 40} Evidence was also presented that Alan is resentful towards his father due to several arguments and incidents that have undermined Alan's relationship with Father. The most recent incident being Father's decision to take Alan to see Weiner without prior notice. Alan was "not comfortable" talking to Weiner and is "resentful" that Father arranged the meeting without his consent. As stated by the magistrate, "While Father's principles are sound, his methodology in instilling those principles is questionable and has caused alienation by his son." R.C. 3109.04(F)(1)(c).

{¶ 41} Finally, testimony at the hearing revealed that, though Mother could do more to facilitate a relationship between Father and Alan, Mother has not willfully denied Father parenting time with Alan. R.C. 3109.03(F)(1)(i). Rather, Father admitted on cross-examination that it is Alan who continuously refuses to have visitation with Father and that Father only contacts Alan about visitation, not Mother. Though Father sends Alan text messages and makes phone calls to Alan, Father never communicates his intentions to visit Alan to Mother.

{¶ 42} "We are mindful that the 'knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court

by a printed record, and the reviewing court should be guided by the presumption that the trial court's findings are correct.'" *Forney*, 2012-Ohio-3427 at ¶ 28, citing *Kenney*, 2004-Ohio-3912 at ¶ 7; *Miller*, 37 Ohio St.3d at 74. Furthermore, a "reviewing court may make assumptions regarding the trial court's consideration of evidence and application of relevant statutory requirements." *Forney* at ¶ 31, citing *Sayre v. Hoelzle–Sayre*, 100 Ohio App.3d 203, 212, 653 N.E.2d 712 (3d Dist.1994); *In re Dye*, 12th Dist. Nos. CA2011-04-004, CA2011-04-005, CA2011-04-006, 2012-Ohio-2570, ¶ 59.

{¶ 43} Here, the trial court considered the testimony of the parents, the exhibits admitted at the hearings, and the information obtained during an in camera interview with Alan. We find this evidence contained sufficient information to find that it is in the best interest of Alan for Mother to be named residential parent and for Father to receive visitation time. Thus, it can be concluded that the trial court reviewed the factors contained in R.C. 3109.04(F) and that the trial court's best interest determination was not unreasonable, arbitrary, or unconscionable.

## Manifest Weight of the Evidence

{¶ 44} Father next contends that the trial court's best interest determination was against the manifest weight of the evidence, as the greater amount of credible evidence offered at the hearings supported a decision to continue the week-to-week alternating visitation schedule.

{¶ 45} The "weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Forney*, 2012-Ohio-3427, ¶ 34. In a manifest weight analysis, "the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in

- 16 -

resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble v. Stark*, 12th Dist. Nos. CA2011-06-063, CA2011-06-064, 2012-Ohio-3130, ¶ 67; *Forney* at ¶ 34. "[E]very reasonable presumption must be made in favor of the judgment and the finding of facts." *Volkman* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment * * *." *Id.*

{¶ 46} Father contends the trial court's decision is contrary to the evidence where, but for the wishes of Alan, the testimony at trial indicated that the alternating week-to-week schedule was in Alan's best interest. Specifically, Father argues (1) Father is the parent more likely to honor and facilitate court-approved parenting time rights; (2) Mother has failed to make child support payments during the pendency of the divorce when Father had full custody; (3) Father had been the primary care provider for Alan "at least three nights a week" from Alan's birth until the divorce while Mother worked the nightshift; and (4) Mother "brainwashes" Alan and does not discipline him for refusing to see his Father in compliance with the shared parenting plan.

{¶ 47} We find Father's arguments unpersuasive. The trial court found that, although both parents have failed to properly communicate with each other regarding Alan, it is Alan, and not Mother, who has refused visitation with Father. The trial court also found that Alan's refusal to see Father stems from Father's conduct in the past which has alienated Alan and caused the father-son relationship to deteriorate. As noted, Alan is 16 years old and adamantly refuses to spend time with Father. From a custody perspective, as opposed to the parenting time analysis discussed below, Alan's preference to stay with Mother, due to his strained relationship with Father, should be allotted significant weight, given his age and general maturity. *See* R.C. 3109.04(F)(1)(b) and (c). Further, the trial court determined that

- 17 -

Father could rebuild his relationship with his son through counseling.

{¶ 48} Upon a careful review of the record, the trial court's best interest determination was based upon competent, credible evidence and the trial court did not clearly lose its way and create a manifest miscarriage of justice. The trial court heard credible evidence that Father and Alan's relationship has deteriorated to the point that the shared parenting plan is no longer in Alan's best interest. As such, the trial court's decision was not against the manifest weight of the evidence. Accordingly, Father's fourth assignment of error is overruled.

{¶ 49} Assignment of Error No. 3:

{¶ 50} THE TRIAL COURT'S JUDGMENT DENIES [FATHER'S] CONSTITUTIONAL DUE PROCESS RIGHTS AND EQUAL PROTECTION OF HIS PARENTING RIGHTS.

{¶ 51} In his third assignment of error, Father argues that Warren County's Basic Parenting Schedule violates his constitutional rights to due process and equal protection by allowing a 16-year-old child to determine whether he wants to see his father or not. Specifically, Father takes issue with the language of the Basic Parenting Schedule which states that parenting for teenagers, age 16 to 18, "shall be fixed between the child and the non-residential parent. Parenting time shall not be limited other than as the child and the non-residential parent choose."

{¶ 52} First, we note that Father did not raise an equal protection issue before the trial court. "It is well-established that an appellate court will not consider issues or arguments raised by the parties on appeal that were not raised to or considered by the trial court." *Anderson v. Anderson*, 12th Dist. No. CA2009-03-033, 2009-Ohio-5636, ¶ 38, citing *Moeller v. Moeller*, 12th Dist. No. CA2001-05-049, 2001 WL 1403103 (Nov. 13, 2001). Therefore, we decline to entertain Father's equal protection argument for the first time on appeal.

{¶ 53} As for Father's due process argument, this claim was raised before the trial

court in Father's Objections to the Magistrate's Decision. Specifically, Father made the following claim before the trial court:

> If his Honor terminates the shared parenting plan and grants sole custody to the Mother, putting into effect the [Basic Parenting Schedule], which says Father's parenting time is limited by Alan's desires and Alan doesn't have to spend parenting time with his Dad if he doesn't want to, Father submits that his constitutional rights as a parent are being taken away without due process. Acknowledging that a minor child is not a chattel, the Courts have clearly protected the rights of parents to have guaranteed parenting time, even when Children's Services is granted temporary custody.

Furthermore, in his "Supplement to Objections to Magistrate's Decision," Father provided:

> If the [Basic Parenting Schedule] is implemented, as recommended in the Magistrate's decision, Father submits that he will be denied his parenting rights without due process of law and in violation of his constitutional rights.
>
> Although a minor legally is not an adult until he reaches 18 years, the standard order in effect De facto emancipates Alan from his Father. Counsel recalls a recent case mentioned in the newspapers where a minor sued to terminate her parent's rights as parents.

{¶ 54} However, the trial court determined, citing Civ.R. 53(D)(3)(b)(ii), that Father's due process argument was "so vague and broad in nature that the Court cannot consider it."[4] Thus, the trial court did not address Father's due process argument before it adopted the magistrate's recommendations.

{¶ 55} Civ.R. 53(D)(3)(b)(ii) provides that objections to a magistrate's decision "shall be specific and state with particularity all grounds for objection." *See Chivukula v. Williams*, 12th Dist. No. CA2009-07-187, 2010-Ohio-1634, ¶ 9. "This rule requires a party to make timely, specific objections in writing to the trial court, identifying any error of fact or law in the magistrate's decision." *Koeppen v. Swank*, 12th Dist. No. CA2008-09-234, 2009-Ohio-3675,

---

4. It appears that the trial court erroneously cited to Civ.R. 53(D)(2)(b)(ii) while quoting the language of Civ.R. 53(D)(3)(b)(ii).

¶ 29. "Except for a claim of plain error, a party is prohibited from assigning as error on appeal the trial court's adoption of any finding or fact or legal conclusion, unless that party has objected to that finding or conclusion." *Chivukula* at ¶ 9, citing Civ.R. 53(D)(3)(b)(iv). "It is well-established that if a party fails to object to a conclusion of law or finding of fact issued by a magistrate, pursuant to Civ.R. 53, the party is precluded from raising the issue on appeal." *Id.*, citing *Cravens v. Cravens*, 12th Dist. No. CA2008-02-033, 2009-Ohio-1733, ¶ 30.

{¶ 56} Here, we find that Father did, with specificity and particularity, state a substantive due process argument that Warren County's Basic Parenting Schedule is a violation of his fundamental right to parent.[5] As such, the trial court erred in failing to address Father's argument on the basis that it was vague and overly broad.

{¶ 57} Consequently, this court cannot yet address Father's due process argument to determine whether application of the Basic Parenting Schedule constitutes a substantive due process violation in this case. *See Lynch v. Lynch*, 12th Dist. No. CA2006-12-145, 2007-Ohio-7083, ¶ 9 (holding that the court of appeals is not in a position to decide certain issues presented on appeal where the trial court did not properly rule on pending objections to the magistrate's decision), citing *Huffman v. Medina Cty. Child Support Enforcement Agency*, 9th Dist. No. 03CA0059-M, 2004-Ohio-729, ¶ 7; and Civ.R. 53(D)(4)(d) ("If one or more objections to a magistrate's decision are timely filed, the court *shall* rule on those objections"). Whether the Basic Parenting Schedule, as applied to the 16 to 18-year-old age bracket, violates a parent's substantive due process rights is a determination that the trial court must make upon remand.

---

5. In fairness to the trial court, unlike the assignment of error raised before this court, which separately sets forth a challenge to the local rule on due process grounds, the objection raised by Father before the trial court was not clearly delineated but, rather, was contained within a sentence or two in lengthy, rambling objections and supplemental objections to the magistrate's decision.

{¶ 58} Accordingly, Father's third assignment of error is sustained and this matter is remanded to the trial court for review of Father's constitutional argument relating solely to substantive due process.

{¶ 59} Assignment of Error No. 5:

{¶ 60} THE TRIAL COURT ABUSED ITS DISCRETION REGARDING CHILD SUPPORT.

{¶ 61} In his fifth assignment of error, Father argues that the trial court should have deviated from the Ohio Guidelines on Child Support pursuant to R.C. 3119.22 and should not have awarded child support because Father's parenting rights were eliminated by the trial court. Father further argues that the trial court erred by selecting January 1, 2012 as the date from which child support payments should be made.

{¶ 62} R.C. 3119.22 provides:

> The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule * * * if, after considering the factors and criteria set forth in [R.C. 3119.23], the court determines that the amount calculated * * * would be unjust or inappropriate and would not be in the best interest of the child.

R.C. 3119.23 then lists 16 factors which the court may consider in determining whether to deviate from the basic child support schedule. These factors include "other court-ordered payments," the "relative financial resources, other assets and resources, and needs of each parent," and "any other relevant factor."

{¶ 63} Just as with Father's due process argument, the trial court did not address Father's child support argument, instead categorizing the claim as being "so vague and broad in nature that the Court cannot consider it" pursuant to Civ.R. 53(D)(3)(b)(ii). Here, however, unlike the due process argument, we agree with the trial court that the majority of Father's argument regarding a child support deviation and a desire to change the "start date" of the

child support payments does not comply with the standard set forth in Civ.R. 53(D)(3)(b)(ii).

{¶ 64} As discussed above, Civ.R. 53(D)(3)(b)(ii) states that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." "[U]nder Civ.R. 53[D](3)(b)[ii], objections must be more than 'indirectly addressed': they must be specific." *Wallace v. Willoughby,* 3rd Dist. No. 17-10-15, 2011-Ohio-3008, ¶ 20, citing *Young v. Young*, 9th Dist. No. 22891, 2006-Ohio-2274, ¶ 5. "When an objecting party fails to state an objection with particularity as required under Civ.R. 53(D)(3)(b)(ii), the trial court may affirm the magistrate's decision without considering the merits of the objection." *Id.*, citing *Triozzi-Hartman v. Hartman*, 11th Dist. No.2006-G-2701, 2007-Ohio-5781, ¶ 15; *Waddle v. Waddle*, 11th Dist. No. 2000-A-0016, 2001 WL 314659 (Mar. 30, 2001).

{¶ 65} In this case, Father stated in his Objections to the Magistrate's Decision, "Regarding child support recommended by the Magistrate to commence January 1, 2012, Father submits that there is a strong compelling basis for selecting the starting date to be the date of [the Magistrate's] decision rather than an earlier date * * * ." However, Father goes no further into explaining what this "strong compelling basis" might be. Thus, Father's argument fails to satisfy Civ.R. 53(D)(3)(b)(ii). Furthermore, we note that, even had Father stated his argument with specificity and particularity, the argument would be unsuccessful, as January 1, 2012 is the beginning of the first month after Mother's motion to modify custody was filed. *See In re P.J.H.*, 196 Ohio App.3d 122, 2011-Ohio-5970, ¶ 12 (2d Dist.) (holding that, absent some special circumstance, the effective date of a support order should be the date the motion for modification was filed).

{¶ 66} Father further submitted that there is a "strong compelling basis" for why the magistrate should deviate "from the calculated amount [of child support] to an amount consistent with the actual expense incurred as a result of Mother's permitting Alan to refuse to follow the Court Order and stay with [Father] every other week." Mainly, Father's

arguments are that (1) Mother does not have "clean hands" in this matter; (2) Mother would not need child support but for the actions of Mother and Alan which have interfered with the week-to-week shared parenting plan; and (3) the trial court should have reviewed the "court-ordered payment" that Father must make on the "speck house" property. Specifically as to this third argument, Father contends that he was ordered to pay mortgage payments on a piece of real property referred to during the hearings as the "speck house." According to Father, these mortgage payments should have been considered by the magistrate and trial court in determining whether to deviate from the basic child support schedule, as R.C. 3119.23(C) allows the court to consider "other court-ordered payments."

{¶ 67} As Father does not state how Mother's "unclean hands" should affect his child support payments, we find that the trial court correctly determined this argument does not comply with Civ.R. 53(D)(3)(b)(ii) and is overly broad and vague. Similarly, it is unclear how "Mother and Alan's actions", which have allegedly "kept Father from sharing equal parenting time and thereby equal expenses," should be considered as part of a deviation from the basic child support schedule under R.C. 3119.22. Without further explanation of this argument by Father, we agree with the trial court that such an argument is not in compliance with Civ.R. 53(D)(3)(b)(ii).

{¶ 68} Finally, though Father's "speck house" argument was not specifically addressed by the trial court, it is clear that what Father specifies as a "court-ordered payment" is, in actuality, the allocation of marital debt and the division of marital property. Father was allocated the "speck house" property free and clear of any claim by Mother as part of the trial court's final decree of divorce. Thus, Father is required to make monthly mortgage payments on the property, just as Mother is required to make mortgage payments on the two pieces of real property she was allocated in the divorce. As such, Father's argument that his "court-ordered payment" should be analyzed under R.C. 3119.22 is without merit, as it is not a

court-ordered payment.

{¶ 69} "It is well-established that if a party fails to object to a conclusion of law or finding of fact issued by a magistrate, pursuant to Civ.R. 53, the party is precluded from raising the issue on appeal." *Chivukula*, 2010-Ohio-1634 at ¶ 9, citing Civ.R. 53(D)(3)(b)(iv). As Father failed to specifically and particularly state his objections to the magistrate's child support order, we find that the trial court properly declined to address those objections and we shall not address those objections on appeal.

{¶ 70} Accordingly, Father's fifth assignment of error is overruled.

{¶ 71} Assignment of Error No. 6:

{¶ 72} THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION TO [FATHER'S] PREJUDICE IN IT'S (SIC) RULINGS ON DISCOVERY AND RULINGS ON EVIDENCE.

{¶ 73} In his sixth assignment of error, Father contends the trial court erred in refusing to allow Father to engage in discovery with Mother. Specifically, Father takes issue with the trial court's (1) refusal to allow "certain discovery," (2) refusal to admit into evidence copies of Mother's Fidelity Investment forms and partial transcripts of prior proceedings in the parties' divorce case, and (3) refusal to take judicial notice regarding the fact that Mother withdrew $12,500 from her pension plan in 2010.

### Discovery

{¶ 74} First, we shall address Father's argument that the trial court erred in refusing to allow Father to conduct "certain discovery."

{¶ 75} We review a trial court's ruling on discovery matters "under an abuse of discretion standard." *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 421 (2009). Civ.R. 26(B)(1) provides for the discovery of material which is relevant to the subject matter of a pending action. The test for whether information is relevant in a

discovery request "is much broader than the test to be utilized at trial." *Icenhower v. Icenhower*, 10th Dist. No. 75AP-93, 1975 WL 181668, *1 (Aug. 14, 1975); *State ex rel. Fisher v. Rose Chevrolet, Inc.*, 82 Ohio App.3d 520, 523 (12th Dist.1992). "It is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence." *Icenhower* at *1*.

{¶ 76} Father asserts that the trial court erred in not permitting Father to obtain certain discovery from Mother. Father claims that this discovery "would go to the credibility of [M]other's testimony," but does not provide what this discovery would be. From a review of the record, it appears the discovery desired by Father relates to Mother's finances, including whether she received any money from her own mother's estate, whether she currently has a pension plan, and whether she withdrew money from any pension plan she may have.

{¶ 77} In this case, the hearings before the magistrate on May 9, 2012 and June 12, 2012 addressed Mother's motion to modify custody and Father's motion for contempt. As noted several times by the magistrate at these hearings, the issue of money and Mother's pension plan were not a part of these hearings and had no relevance to the issues of custody and contempt. Therefore, any discovery relating to Mother's financial status and pension plans would not have reasonably led to the discovery of admissible evidence regarding custody and contempt.

{¶ 78} Furthermore, even if discovery of this information would have been permitted, Father could not have used this evidence to impeach Mother's credibility. Pursuant to Evid.R. 608(B), "[s]pecific instances of the conduct of a witness, for the purpose of attacking or support the witness's character for truthfulness, * * * may not be proved by extrinsic evidence." Thus, any financial information discovered by Father from Mother would not have led to admissible evidence, as the evidence was irrelevant and inadmissible under Evid.R. 608(B). As such, the trial court did not abuse its discretion in denying Father's discovery

requests.

## Admission of Evidence

**{¶ 79}** Next, we turn to Father's argument that the trial court erred in refusing to admit into evidence copies of Mother's Fidelity Investment forms and partial transcripts of pervious hearings in this divorce case wherein Mother allegedly lied on the stand.

**{¶ 80}** It is well established that the "admission or exclusion of relevant evidence rests within the discretion of the trial court. An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent a clear and prejudicial abuse of discretion." *Donovan v. Donovan*, 110 Ohio App.3d 615, 620 (12th Dist.1996); *In re Bays*, 12th Dist. No. CA2003-02-026, 2004-Ohio-915, ¶ 7; *State v. Robb*, 88 Ohio St.3d 59, 68 (2000).

**{¶ 81}** As stated by Evid.R. 402, "[a]ll relevant evidence is admissible" and that "[e]vidence which is not relevant is not admissible." "Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

**{¶ 82}** As noted above, the issues before the magistrate and the trial court during the May 9, 2012 and July 12, 2012 hearings were those involving the custody and parenting of Alan and contempt. Mother's Fidelity Investment account and whether Mother's testimony at a prior hearing was consistent with her testimony at the May 9, 2012 and July 12, 2012 hearings were irrelevant. Without any guidance from Father as to how this information would be relevant as to the custody of Alan, we do not find that the trial court's refusal to admit this evidence was unreasonable, arbitrary, or unconscionable. Furthermore, as discussed above, this evidence would be inadmissible pursuant to Evid.R. 608(B).

## Judicial Notice

**{¶ 83}** Finally, we turn to Father's contention that the trial court erred in refusing to

take judicial notice that Mother withdrew $12,500 from her pension plan in 2010. Father asserts that Mother's alleged withdrawal of this money went to her credibility, as she has allegedly lied about this withdrawal at a separate hearing. Father further hinted at the hearing that this argument may go towards the trial court's award of child support.

{¶ 84} Evid.R. 201 provides that a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In other words, courts may take judicial notice of "whatever is generally known or ought to be generally known within the limits of their jurisdiction, for the court is presumed to know what is of common knowledge." 15 Ohio Jurisprudence 2d 474, Criminal Law, Section 299; *State v. Scott*, 3 Ohio App.2d 239, 242 (7th Dist.1965).

{¶ 85} Mother's alleged withdrawal of $12,500 from her pension plan is not the type of information generally known or capable of accurate and ready determination as required by Evid.R. 201. Additionally, the evidence would not be admissible pursuant to Evid.R. 608(B). As such, the trial court did not err refusing to take judicial notice of Mother's alleged withdrawal of money from her pension plan.

{¶ 86} For the foregoing reasons, we find that the trial court did not abuse its discretion in refusing to permit Father's discovery requests and in refusing to admit or take judicial notice of evidence regarding Mother's finances. Accordingly, Father's sixth assignment of error is overruled.

{¶ 87} Assignment of Error No. 7:

{¶ 88} THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION TO [FATHER'S] PREJUDICE BY FAILING TO COMPLY WITH CIVIL RULE 53(D)(4)(d) AND BY STATING THAT [FATHER] FAILED TO COMPLY WITH CIVIL RULE

53(D)(2)(b)(ii).

**{¶ 89}** In his seventh and final assignment of error, Father argues the trial court (1) improperly failed to rule on all of the objections raised in Father's August 2, 2012 objections to the magistrate's decision and (2) failed to undertake an independent review of the record before adopting the magistrate's recommendations, as required by Civ.R. 53(D)(2)(b)(ii).

**{¶ 90}** First, Father argues that he "raised the same factual and legal issues in his objections that he is raising in his appeal" here and that those objections complied with Civ.R. 53(D)(3)(b)(ii).[6]  As previously provided, Civ.R. 53(D)(3)(b)(ii) governs the filing of objections to a magistrate's decision and provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection."

**{¶ 91}** In this case, Father fails to articulate which objections he believes the trial court erred in finding overly broad and vague.  Based upon our review of the record and the trial court's Entry Overruling Objections to the Magistrate's Decision, the trial court reviewed and addressed each of Father's objections that were stated with specificity and particularity except Father's due process and child support objections.  It was only Father's general objection that "[d]uring the hearings the magistrate made numerous ruling to which [Father] objected.  These need to be reviewed by the Court upon availability of the transcript" which the trial court appears to have determined was so vague and broad as to not comply with Civ.R. 53(D)(3)(b)(ii).  As this general objection is precisely the type of objection that Civ.R. 53(D)(3)(b)(ii) was created to prevent, the trial court did not err in determining that the objection was not in compliance with the civil rules and need not be addressed.

**{¶ 92}** Father further contends the trial court erred by not undertaking an independent

---

6. We note that Father, as well as the trial court, erroneously cite to Civ.R. 53(D)(2)(b)(ii) while relying upon the language of Civ.R. 53(D)(3)(b)(ii). Therefore, we shall review Father's arguments in relation to Civ.R. 53(D)(3)(b)(ii).

review of the record in accordance with Civ.R. 53(D)(4)(d).[7] Specifically, Father asserts that, because the trial court's entry overruling Father's objections is devoid of any statement that the trial court took an independent review of the objected matters, the trial court's review was improper.

**{¶ 93}** Civ.R. 53(D)(4)(d) provides that, in ruling on timely filed objections, "the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." "A failure of the trial court to conduct an independent review of the magistrate's recommendations as required by Civ.R. 53(D)(4)(d) is an abuse of discretion." *Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, ¶ 5 (3rd Dist.); *Figel v. Figel*, 3d Dist. No. 10-08-14, 2009-Ohio-1659, ¶ 10. An appellate court "must presume that a trial court has performed an independent review of the magistrate's recommendations unless the appellant affirmatively demonstrates the contrary." *Gilleo v. Gilleo*, 3d Dist. No. 10-10-07, 2010-Ohio-5191, ¶ 46.

**{¶ 94}** In this case, Father has presented no evidence affirmatively demonstrating that the trial court did not perform an independent review of the magistrate's decision. The fact that the trial court did not state in its decision that it took an independent review of the record does not mean that such a review did not occur. Furthermore, the fact that the trial court did not cite to any specific portion of the transcript or any exhibit admitted into evidence in this case in overruling Father's objections to the magistrate's decision does not demonstrate that the trial court failed to conduct an independent review as to the objected matters as required by Civ.R. 53(D)(4)(d). "While citing such material would tend to demonstrate that the trial court conducted the requisite independent review, there is no requirement in Civ.R.

---

7. Again, Father mislabels the civil rule as Civ.R. 53(D)(2)(b)(ii).

53(D)(4)(d) that the trial court do so." *Hampton v. Hampton*, 12th Dist. No. CA2007-03-033, 2008-Ohio-868, ¶ 17.

{¶ 95} Thus, without any affirmative demonstration to the contrary by Father, we must presume that the trial court performed an independent review of the magistrate's decision in compliance with Civ.R. 53(D)(4)(d). Accordingly, Father's seventh and final assignment of error is overruled.

{¶ 96} Judgment affirmed, in part, and reversed, in part. The cause is remanded for further proceedings consistent with this opinion.


HENDRICKSON, P.J. and S. POWELL, J., concur.