[Cite as *Bingham v. Elliott*, 2013-Ohio-3314.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| AUTUMN BINGHAM, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2012-11-083 |
| | : | O P I N I O N<br>7/29/2013 |
| - vs - | : | |
| | : | |
| CHRISTOPHER ELLIOTT, | : | |
| Defendant-Appellee. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2000 JH 9195

Susan Mineer, 65 North Second Street, Suite 200, Batavia, Ohio 45103, for plaintiff-appellant

Christopher Elliott, 1160 S. Timbercreek Drive, Milford, Ohio 45150, defendant-appellee, pro se

**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Autumn Bingham ("Mother"), appeals a decision of the Butler County Common Pleas Court, Juvenile Division, dismissing her motion to modify custody. For the reasons outlined below, we affirm the decision of the trial court.

{¶ 2} Mother and Christopher Elliott ("Father") are the parents of a minor son, Avery, born June 9, 2000. In June 2001, after a complaint for support, Mother was designated residential parent of Avery with Father receiving visitation. Though the couple's relationship

was already contentious, this arrangement proceeded for the next seven years until February 2008, when Father moved to modify the couple's shared parenting plan, hold Mother in contempt, and modify visitation. In April 2009, the trial court designated Father as the residential parent and awarded Mother standard visitation of Wednesdays and every other weekend.

{¶ 3} Throughout 2010 and 2011, the contentious relationship between Mother and Father continued, with harsh words and foul language being used in a variety of text messages generally relating to parenting time and visitation. Consequently, on January 26, 2012, Mother sought to modify custody and again become residential parent of Avery. Mother alleged that a change in circumstances had occurred based upon the "increasing hostility between" Mother and Father as well as Father's failure to comply with court orders including (1) being flexible with Mother's pickup time of Avery; (2); requiring Avery call Mother at 8:00 p.m. every night; (3) sending Avery's prescription medications on visitation trips in the proper prescription bottles; and (4) notifying Mother of the names of Avery's school, teachers, and doctors.

{¶ 4} A change in circumstances hearing was held on April 23, 2012 and June 28, 2012 before a magistrate. At the hearing, Mother presented a series of text messages between herself, Father, and Father's wife, Kathryn ("Stepmother"). The text messages related to several days beginning in 2011 when Mother requested to alter her "pick up time" of Avery to allow her to also pick up her daughter from a different relationship. Mother would often make these requests on the day of the scheduled visitation without providing additional notice. Father and Stepmother would initially deny Mother's requests and the text messages often resulted in arguments where all parties involved hurled insults and threats at each other. Oftentimes, however, Mother would receive the altered pickup time or a time close to what she had requested.

{¶ 5} Mother then introduced text messages between herself and Father wherein Mother requested Avery call her every evening at 8:00 p.m. per a 2011 court order. Specifically, the court order read that "each parent shall have the child call the other parent at 8:00 p.m. unless otherwise unavailable. If that time is not convenient the parents shall have the child call at a time that is convenient." Father responded to Mother's text message by stating that Avery did not want to call her and that he was not going to force Avery to make the call. Father further stated that his family was very busy and they did not have time for Avery to call Mother.

{¶ 6} Mother also testified regarding Avery's medications. According to previous court orders, Father was to provide Mother enough of Avery's medication for the duration of his visits with Mother. This medication was to be provided in the original prescription bottles. Yet, Mother testified that Father repeatedly provided the medication in plastic baggies instead of the prescription bottles and sometimes failed to provide the necessary amount of medication for the visitation period. Father later testified that he put the medication in plastic baggies because Mother would throw away the prescription bottles, making it difficult for Father to refill the prescriptions.

{¶ 7} Mother also stated that, although she had received the names of Avery's school, teachers, and doctors prior to the change in circumstances hearing, it had taken Father months to comply with the 2011 court order which required Father to turn over this information.

{¶ 8} Finally, Mother testified about her contentious relationship with Father dating back to 2000. She stated that the hostility between the couple had recently escalated to violence and, during one incident in January 2012, Father had "slammed a door in [Mother's] face" and shoved her and that Stepmother had slapped Mother in the face during this same altercation. Mother further stated that Avery's relationship with Stepmother had also

deteriorated, leading to two incidents wherein Avery struck Stepmother. One such incident occurred between the first change in circumstances hearing on April 23, 2012 and the second hearing on June 28, 2012.

{¶ 9} On July 2, 2012, the magistrate denied Mother's motion, making several factual determinations, including:

(1) [Father] permits phone calls between [Mother] and Avery only if [Father] is present. At present Avery rarely calls either parent when he is without the other parent.

(2) [Father] has not always sent Avery's medications with Avery during [Mother's] parenting because he fears that [Mother] will somehow misuse the medications.

(3) On or about March 10, 2011, * * * [Mother] would pick up [her daughter from a different relationship] 2 hours early * * *. [Father] would not agree to an earlier pickup time for Avery on that day.

(4) For several days prior to January 15, 2012, there were a number of text messages between [Father] and [Mother] over a pair of Ralph Loren (sic) jeans that Avery wore from [Mother's] to [Father's]. On Sunday January 15, 2012 while returning Avery to [Father], [Mother] demanded the return of the jeans. When [Father] could not produce the exact jeans, an argument broke out. [Mother], claiming to have been assaulted by [Father] and [Stepmother], called the police. No criminal charges were filed however [Mother] sought Civil Protection Orders against [Father] and his wife; those cases were both ultimately dismissed in March 2012.

(5) There have been two recent confrontations between Avery and [Stepmother], during which Avery has struck of (sic) hit [Stepmother].

Upon making these findings, the magistrate concluded that a change in circumstances had not occurred in this case, noting that matters between Mother and Father "remain as contentious as they have always been." The trial court adopted the decision of the magistrate on July 16, 2012 but, upon Mother's filing of objections to the magistrate's decision, allowed argument and briefing by both parties. Subsequently, on November 1,

2012, the trial court overruled Mother's objections to the magistrate's decision, dismissed Mother's motion for custody and "affirmed in its entirety" the magistrate's July 2, 2012 decision.

{¶ 10} From the trial court's November 1, 2012 decision, Mother appeals, raising a single assignment of error:

{¶ 11} IT WAS ERROR FOR THE TRIAL COURT TO DENY THE MOTION FOR CUSTODY WHEN THE EVIDENCE CLEARLY WAS SUFFICIENT FOR A CHANGE OF CIRCUMSTANCES FINDING.

{¶ 12} In her sole assignment of error, Mother argues the trial court erred in determining that a change of circumstances warranting the modification of parenting rights had not occurred. Specifically, Mother contends the threshold for finding a change of circumstances is met where (1) animus between the parents escalates to the point of violence; (2) violent altercations have occurred between the child and a stepparent; and (3) one parent has continually and "notoriously" attempted to interfere with the other's parenting time.

{¶ 13} "First, 'we acknowledge that the power of the trial court to exercise discretion is peculiarly important in proceedings involving the custody and welfare of children.'" *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 33, quoting *Forney v. Forney*, 12th Dist. Clermont No. CA2011-08-057, 2012-Ohio-3427, ¶ 12. As "custody issues are some of the most difficult and agonizing decisions a trial judge must make," the judge must be given "wide latitude in considering all the evidence" due to "the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Therefore, the trial court's determinations shall be reviewed under an abuse of discretion standard. *Forney* at ¶ 12. The term abuse of discretion "connotes more than an error of law or judgment; it implies that

the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} "In reviewing a custody determination, an appellate court must 'review the record to determine whether there is any evidence in support of the prevailing party.'" *Cottrell* at ¶ 34, quoting *Sallee v. Sallee*, 142 Ohio App.3d 366, 370 (12th Dist.2001); *Ross v. Ross*, 64 Ohio St.2d 203, 206 (1980). "While reviewing the record, the appellate court must keep in mind that the trial court is better equipped to examine and weigh the evidence and to make decisions concerning custody[.]" *Sallee* at 370; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶ 15} In determining whether a modification of custody is warranted, a court must follow R.C. 3109.04(E)(1)(a), which provides, in pertinent part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] the child's residential parent * * * and that the modification is necessary to serve the best interest of the child.

In applying these standards, the trial court shall retain the residential parent designated in the prior decree unless a modification is in the child's best interest and the harm likely to be caused by the change of environment is outweighed by the advantages of the change to the child. R.C. 3109.04(E)(1)(a)(iii); *Cottrell* at ¶ 35; *Forney* at ¶ 13. "The clear intent of the statute is to spare children from the constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment." *Flickinger*, 77 Ohio St.3d at 418, citing *Wyss v. Wyss*, 3 Ohio App.3d 412, 416 (10th Dist.1982). R.C. 3109.04(E) "is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a 'better' environment." *Id.*

{¶ 16} Essentially, Mother argues that the level of animosity between her and Father,

her and Stepmother, and Stepmother and Avery has escalated to such a degree that a change in circumstances has occurred supporting consideration of whether it is within Avery's best interest to continue to reside with Father. Mother additionally contends that Father's continued conduct of ignoring the trial court's orders relating to her visitation with Avery is a change in circumstances.

{¶ 17} "Although R.C. 3109.04 does not provide a definition of the phrase 'change in circumstances,' Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Lewis v. Lewis*, 12th Dist. Butler No. CA2001-09-209, 2002-Ohio-1601, ¶ 7, citing *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604-605 (7th Dist.2000). In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Flickinger* at 418.

{¶ 18} In support of her argument that the animosity between the parties constitutes a change in circumstances, Mother relies upon the events of January 15, 2012 regarding a pair of Ralph Lauren jeans. According to Mother, Father shoved Avery away from Mother, struck her, and physically pushed her out of his residence when he could not produce the pair of jeans Mother had purchased for Avery and sought returned. However, Mother acknowledged that law enforcement, which she called to the scene, refused to file any charges, that protection orders filed by Mother against Father and Stepmother were later dismissed, and that Children's Services investigated the allegations that domestic violence had occurred against Avery in Father's home and found these allegations to be "unsubstantiated."

{¶ 19} The trial court, having presided over this custody dispute since its inception, is in a position to better examine and weigh the evidence and arguments of these parties and to determine whether the level of discord between them has changed to such an extent as to constitute a change in circumstances. *See Sallee*, 142 Ohio App.3d at 370; *Miller*, 27 Ohio

St.3d at 74. "We are mindful that the 'knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record, and the reviewing court should be guided by the presumption that the trial court's findings are correct.'" *Cottrell*, 2013-Ohio-2397 at ¶ 42, quoting *Forney*, 2012-Ohio-3427 at ¶ 28.

{¶ 20} From our review of the record, it is clear that the animosity and hostility between Mother and Father has existed and will continue to exist for the foreseeable future. The trial court noted as early as 2001 that "heated discussions between the parties" began occurring during visitation exchanges including the exchange of curse words and Mother striking Father in the face. As stated by the magistrate in her July 2, 2012 decision, "matters between [Mother] and [Father] remain as contentious as they have always been." Moreover, Mother testified at the change in circumstances hearing that her relationship with Father had been "extremely contentious" since the two separated in 2000. Though the magistrate did find, on two occasions, that Avery had struck or hit Stepmother, the magistrate and the trial court were in the best position to weigh the significance of these incidents and the trial court found that they were not so significant as to create a change in circumstances. Therefore, we find that the trial court did not abuse its discretion in determining that a change in circumstances had not occurred in this case relating to increased hostility between all individuals involved.

{¶ 21} Mother further contends that a change in circumstances occurred based upon Father's blatant disregard for the trial court's visitation orders. Specifically, Mother cites to Father's (1) inflexibility with Mother's pickup time of Avery; (2) failure to facilitate telephone conversations between Mother and Avery; (3) failure to send Avery's medications in the prescription bottles; and (4) failure to timely notify Mother of important information regarding Avery's education and health.

{¶ 22} Though it is clear that Father has not been flexible in complying with the trial

- 8 -

court's visitation orders, the evidence establishes that Mother consistently received Avery's medications and she was usually allowed the visitation modifications she requested, albeit after the exchange of heated text messages. Additionally, Mother admitted to giving up extra visitation time with Avery that Father offered because she did not want to play Father's "games." Mother also acknowledged that she does not comply with the court order requiring each parent to have Avery call the other parent at 8:00 p.m. during her visitation, although she argues that a change in circumstances has occurred based upon Father's noncompliance with this order. Finally, Mother admitted that she was ultimately notified of the names of Avery's school, teachers, and doctors prior to the change in circumstances hearing. Thus, Mother has failed to demonstrate how Father has blatantly disregarded the court's orders in such a manner as to constitute a change in circumstances.

{¶ 23} We find that the trial court did not err in finding that a change in circumstances did not exist in this case. Mother has failed to demonstrate that the animosity between the parents was an "event, occurrence, or situation" which materially and adversely affected Avery or that the change in circumstances was one "of substance" and not a "slight or inconsequently change." *See Lewis*, 2002-Ohio-1601 at ¶ 7. Furthermore, Mother has failed to indicate how a change of custody would resolve the hostility between these parties or the parents' inability to comply with court orders. Rather, Mother simply wishes to change custody because she believes she could provide Avery a "better environment." *Flickinger*, 77 Ohio St.3d at 418, citing *Wyss*, 3 Ohio App.3d at 416. It is this type of case—this "constant tug of war" between parents—which R.C. 3109.04 was specifically designed to prevent. *Id.*

{¶ 24} Accordingly, Mother's sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.