[Cite as *Capano & Assocs., L.L.C. v. On Assignment, Inc.*, 2016-Ohio-998.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| CAPANO & ASSOCIATES, LLC, | : | |
| | | CASE NO.   CA2015-08-153 |
| Plaintiff-Appellant, | : | |
| | | O P I N I O N |
| | : | 3/14/2016 |
| - vs - | | |
| | : | |
| ON ASSIGNMENT, INC, | : | |
| Defendant-Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-08-2497

Vorys, Sater, Seymour and Pease, LLP, Daniel J. Buckley and Erin D. French, Great American Tower, Suite 3500, 301 East Fourth Street, Cincinnati, Ohio 45202, for plaintiff-appellant

Frost Brown Todd LLC, Grant S. Cowan, Zachary A. El-Sawaf, Great American Tower, Suite 3300, 301 East Fourth Street, Cincinnati, Ohio 45202, for defendant-appellant

**M. POWELL, P.J.**

{¶ 1}   Plaintiff-appellant, Capano & Associates, LLC, appeals from a decision in the Butler County Court of Common Pleas ruling in favor of defendant-appellee, On Assignment, Inc., regarding a tortious interference with contract claim.  For the reasons discussed below, we affirm the decision of the trial court.

{¶ 2}   This dispute arises out of Capano's contract to provide staffing services to

Proctor & Gamble's ("P&G") Material and Process Delivery ("MPD") department at its St. Louis plant. Capano and On Assignment compete in providing technical resources, including staffing, to third-party businesses. Both Capano and On Assignment have provided resources to P&G for approximately ten years. In 2010, Capano entered into a formal contract with P&G that was renewed every year until 2013.

{¶ 3} In early 2013, in order to limit its liability, P&G hired a company called Versatex to act as a middleman between P&G and staffing companies like Capano and On Assignment. To continue to do business with P&G, P&G required the staffing companies to enter into a subcontract with Versatex. On Assignment and Capano were each offered subcontracts with Versatex. On Assignment accepted the offered subcontract with Versatex. The subcontract Versatex offered to Capano proposed a 33 percent reduction to the rates charged by Capano. In May 2013, Capano responded to Versatex's offered subcontract and proposed a 17 percent rate increase to account for cost increases it was absorbing in P&G's St. Louis plant. Capano's proposed rate increase was ultimately rejected.

{¶ 4} On May 30, 2013, in response to On Assignment's inquiry regarding potential staffing openings, Versatex emailed On Assignment job descriptions for potential openings at P&G's St. Louis plant in the MPD department. Subsequently, On Assignment sent candidate resumes to P&G and Versatex. Several candidates were interviewed by telephone, and On Assignment advised four candidates that a job offer may be forthcoming. However, on June 10, 2013, Versatex informed On Assignment that rather than hiring four new people for the MPD department positions, P&G and Versatex might want to extend job offers to four incumbent Capano employees.

{¶ 5} On June 11, 2013, P&G informed Capano that it would not be renewing its contract for the St. Louis plant. After Capano was notified of the nonrenewal of its contract with P&G, Capano informed P&G that its employees were subject to noncompete

agreements. Versatex informed On Assignment of the noncompete agreements and of its continued intention to hire the four Capano employees, notwithstanding the noncompete agreements. On June 11, 2013, On Assignment contacted the four Capano employees regarding continued employment in the MPD department as On Assignment employees. On June 13, 2013, On Assignment conducted an in-person meeting with the four Capano employees who were interested in being hired by On Assignment.

{¶ 6} Also on June 13, 2013, Capano contacted each of the four employees advising them that Capano's contract with P&G was terminating effective June 28, 2013, and that their employment with Capano was ending the same day. Capano stated it would pursue legal action if the employees continued to work at P&G's St. Louis plant. Despite this notification, the four Capano employees accepted employment with On Assignment. On June 24, 2013, three of the four Capano employees, along with one new hire, began working for On Assignment at P&G's St. Louis plant. The fourth Capano employee was placed by On Assignment with a customer other than P&G.

{¶ 7} On August 30, 2013, Capano filed suit against On Assignment, alleging On Assignment tortiously interfered with the contract between Capano and its employees. Capano asserted that On Assignment's interference with the contract resulted in damages to Capano because On Assignment's hiring of the Capano employees inhibited Capano's ability and opportunity to compete for and renegotiate its contract with P&G.

{¶ 8} The matter proceeded to a bench trial before a magistrate on September 2, 2014. The magistrate found that while the covenants not to compete signed by Capano employees were enforceable and On Assignment had interfered with the contracts, Capano failed to show On Assignment's interference proximately caused damages. Specifically, the magistrate found there was no evidence presented that the only reason P&G awarded the contract to On Assignment was because it employed the four Capano employees.

Conversely, the magistrate found there was no evidence that Capano would have been awarded the contract if it had maintained its employees. Furthermore, the magistrate found the employees were not irreplaceable as one of the four positions was not filled by a former Capano employee. The magistrate also found that Jeffrey Capano's belief and self-serving testimony that P&G representatives told him the contract would be renewed, carried little weight. Capano did not object to the magistrate's decision. On July 16, 2015, the trial court adopted the magistrate's decision.

{¶ 9} Capano now appeals and asserts a single assignment of error for review:

{¶ 10} THE TRIAL COURT, HAVING FOUND A VALID COVENANT NOT TO COMPETE AND WRONGFUL INTERFERENCE WITH THE COVENANT, ERRED WHEN IT CONCLUDED THAT PLAINTIFF WAS NOT ENTITLED TO DAMAGES.

{¶ 11} Capano argues On Assignment's interference with the contract between Capano and its employees proximately resulted in damages to Capano because Capano employees were in "very critical" roles at P&G, and On Assignment used Capano's confidential billing information to offer cost savings to P&G. In making its argument, Capano relies on a Second Appellate District case, *Innovative Technologies. Corp. v. Advanced Mgt. Technology, Inc.*, 2d Dist. Montgomery No. 23819, 2011-Ohio-5544. In the context of summary judgment and a directed verdict, the Second Appellate District found that when certain employees were essential and crucial to a third party's decision to contract with defendant rather than plaintiff, the plaintiff met its burden to establish proximate cause even though there were reasons other than defendant's interference why plaintiff may not have been awarded the contract. *Innovative* at ¶ 27, 35, 47.

{¶ 12} Capano argues that similar to *Innovative*, Capano employees were in very critical roles in P&G's operation and were thus essential. Specifically, Capano argues that when On Assignment interfered with the contract, such interference proximately caused P&G

to terminate its contract with Capano, resulting in damages. However, *Innovative* involved the standards applicable to motions for summary judgment and directed verdict. Those standards are very different from the preponderance of the evidence standard applicable in a bench trial, as is the case here.

{¶ 13} Furthermore, because Capano failed to object to the magistrate's decision, our standard of review is extremely deferential to the trial court's decision. By failing to object to the magistrate's decision, Capano forfeited the right to assign any error on appeal as to the trial court's adoption of any factual or legal conclusion made by the magistrate except for plain error. Civ.R. 53(D)(3)(b)(iv). The Ohio Supreme Court has articulated the civil plain error standard as follows:

> [R]eviewing courts must proceed with the utmost caution, limiting the doctrine strictly *to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings*.

(Emphasis added.) *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997).

{¶ 14} Tortious interference with contract consists of five elements: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999). The magistrate found Capano met the first four elements by a preponderance of the evidence, but did not meet its burden as to the fifth element. The only issue on appeal is whether On Assignment's conduct proximately caused damages to Capano.

{¶ 15} In a tortious interference with contract claim, a plaintiff may recover pecuniary loss and consequential harms for which the interference constituted legal or proximate cause. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2014-06-015, 2015-Ohio-1600, ¶

23. Proximate cause is "some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered." *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 618 (1995). When a theory of proximate cause is one upon which reasonable minds could differ, then proximate cause raises a question for the trier of fact. *See Smiddy v. Wedding Party, Inc.*, 30 Ohio St.3d 35, 40 (1987); *Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Corp.*, 42 Ohio St.2d 122, 128 (1975). "The trier of facts always has the duty, in the first instance, to weigh the evidence presented and has the right to accept or reject it." *Ace Steel Baling, Inc. v. Porterfield*, 19 Ohio St.2d 137, 138 (1969).

{¶ 16} Under the deferential civil plain error standard of review, we find the trial court's decision does not create a manifest miscarriage of justice. Evidence presented indicated that the four employees were critical, P&G desired a quick transition, and On Assignment may have used confidential information relating to Capano's rates when it formulated its bid. However, other potential proximate causes existed for P&G not renewing Capano's contract. Capano's proposed 17 percent rate increase was 50 percent more than the offered subcontract proposing a 33 percent rate decrease. There was also evidence that P&G and Versatex were concerned about Capano double billing for its services at the St. Louis Plant. Additionally, the self-serving testimony presented by Jeffrey Capano that he believed P&G would have renewed its contract with Capano had On Assignment not hired the Capano employees was insufficient to support the element of proximate cause. *See Costaras v. Dunnerstick*, 9th Dist. Lorain No. 04CA008453, 2004-Ohio-6266. In contrast to Jeffrey Capano's self-serving testimony, the evidence showed the four employees were not irreplaceable as one employee accepted On Assignment's offer of employment, but chose to work for a company other than P&G. P&G hired a new employee to fill this position.

{¶ 17} As the trier of fact, the magistrate found Capano failed to establish by a

- 6 -

preponderance of the evidence the causal connection between On Assignment's actions and P&G's failure to renew Capano's contract. Given the deferential civil plain error standard of review and the conflicting evidence, which included evidence providing a reasonable basis for the trial court's decision, this is not one of "those extremely rare cases" presenting "exceptional circumstances" where the confidence of the public in judicial proceedings is undermined. As such, the civil plain error standard provides no basis for Capano's relief. Capano's sole assignment of error is overruled.

{¶ 18} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.