[Cite as *Maloney v. Maloney*, 2016-Ohio-7837.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| CARMIE ANNE STEELE MALONEY, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-10-098 |
| | : | O P I N I O N |
| - vs - | | 11/21/2016 |
| | : | |
| FORREST TIMOTHY MALONEY, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 13DR36313


Caparella-Kraemer & Associates, LLC, Stephanie Brunemann, 4841A Rialto Road, West Chester, Ohio 45069, for plaintiff-appellee

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Forrest Maloney ("Husband"), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, denying motions for contempt he filed against Carmie Maloney ("Wife"), regarding the division of stock after the parties' divorce.

{¶ 2} The parties were divorced in 2014, and their divorce decree incorporated a

separation agreement, which became the order of the court. According to the agreement, the parties were to equally divide their investment trust and other accounts, including significant assets in a Procter and Gamble ("P&G") Profit Sharing Trust. However, the agreement did not set forth specific guidelines, such as the party responsible for completing the actions necessary to divide the trust. Nor were specific timelines or completion deadlines set forth.

{¶ 3} Wife agreed to prepare a Qualified Domestic Relations Order ("QDRO") to effectuate property division, but incurred several problems when P&G refused to accept certain documents necessary for the division. P&G required additional information, such as the date to be used to value the stock for division purposes.

{¶ 4} Since the time of the divorce, Husband relocated to China where he works as a consultant, earning $1,250 per hour. After Husband did not receive all of the money he thought he was entitled to, Husband filed two motions for contempt, both involving the failure to divide the stock as ordered. Husband also moved the court to award him $500,000 in fees related to his missing work and loss of consulting fees due to flying to and from the United States and China to attend hearings. Husband also sought attorney fees incurred in prosecuting his motions for contempt.

{¶ 5} During the pendency of the motions, and after several months of negotiation, the parties eventually reached an agreement on the required information for processing the division of property, and Wife submitted a proposed QDRO to P&G. However, P&G required further changes to the proposed QDRO. The parties agreed to sign the QDRO when Husband would be present in the United States for the court hearing on his contempt motions. At that point, Wife made the final changes to the QDRO and both parties signed the document on the day of the court hearing.

{¶ 6} Also during the time it took to finalize the QDRO, Husband was responsible for

dividing other accounts, including stock options the parties were to share, as well as paying Wife her portion of refunds Husband received. At the time of Husband's contempt motions, he owed Wife approximately $25,000, which did not include tuition Husband was to pay on behalf of the couple's emancipated children.

{¶ 7} A magistrate eventually held a hearing on Husband's contempt motions and request for expenses and fees. Husband and Wife both appeared, and offered evidence and testimony specific to Husband's motions for contempt. The magistrate denied the contempt motions, and also denied Husband's request for fees and expenses. Husband filed objections to the magistrate's decision, which were overruled by the trial court. Husband now appeals the trial court's ruling, raising two assignments of error, which we will address together because they are interrelated.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT FIND APPELLEE IN CONTEMPT OF COURT.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT AWARD HIM FEES AND EXPENSES.

{¶ 12} Husband argues in his two assignments of error that the trial court erred by not finding Wife in contempt and by not awarding him fees and expenses associated with the contempt motions.

{¶ 13} "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 11. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-

- 3 -

002, 2013-Ohio-15, ¶ 35. When a court order does not include a deadline for compliance, a reasonable time for compliance may be utilized in determining whether the party who lacks compliance may be held in contempt. *Willis v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716 (12th Dist.).

{¶ 14} In reviewing a trial court's finding of contempt, an appellate court will not reverse such a finding absent an abuse of discretion. *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 73. Similarly, it is well-established that an award of attorney fees/expenses is within the sound discretion of the trial court. *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 62. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} We find that the trial court did not abuse its discretion in denying Husband's motions for contempt and in not awarding Husband expenses and fees. A review of the record indicates that the separation agreement, incorporated by the final divorce decree, lacked details regarding the separation of property. The decree does not set forth any party responsible for executing the QDRO, nor any temporal deadlines for doing so. As such, there were no valid court orders regarding the exact manner the property was to be divided or the deadline for doing so.

{¶ 16} Husband does not dispute these facts. Instead, he argues that Wife failed to act in a reasonable time when executing the QDRO and providing him his share of the trust. We disagree. The record is clear that the parties negotiated extensively regarding the way in which the trust would be divided, and what information, such as the stock valuation date, would be provided to P&G to effectuate the division. The ongoing negotiations were at the behest of both parties, and at some points, Husband took as long as two months to respond

to some of Wife's communications.

{¶ 17} There is no doubt from the record that the division of the parties' assets was time-consuming. Much of the delay in effectuating the QDRO was specific to the requirements and process required by P&G for division of property. For example, P&G rejected Wife's first division attempt because P&G would not divide an account with assets comprised of both money and stock. As previously mentioned, P&G also required the paperwork to contain the effective valuation date of the stock, which was not set forth in the divorce decree/separation agreement. The parties also had to address tax considerations, and take time to understand tax liability issues.

{¶ 18} Despite there being no orders in place regarding how the parties' assets would be disbursed, the record is clear that Wife agreed to execute the division while Husband lived in China. During this time, Wife made several payments to Husband, one of which was $500,000, as the funds became available for division. During the same time, however, Husband did not make any of the payments to Wife, as set forth in the separation agreement incorporated into the divorce decree. Regardless of Husband's failure to pay Wife, until the parties agreed to the final division terms, Wife was unable to divide the property with finality. The trial court's determination that Wife's actions were completed within a reasonable amount of time, especially given the facts and circumstances of this case, was not unreasonable, arbitrary, or capricious.

{¶ 19} For the same reasons, the trial court was correct to deny Husband's request for fees and expenses. Despite there being no court order regarding the exact manner of property division or related time deadlines, Husband chose to file multiple motions for contempt against Wife because he was dissatisfied with the amount of time the division was taking. Husband chose to fly to and from China, and chose to miss lucrative earning opportunities to prosecute motions, despite no court orders being in place that required Wife

to act within any express timeline.[1]

**{¶ 20}** To some degree, Husband contributed to the delay in effectuating the division of property. For example, Husband refused to utilize tax liability information gathered by Wife's tax experts, and instead, expended the time and expense to hire his own tax experts. Rather than promptly working with Wife to finalize the details, Husband elected to file motions for contempt.

**{¶ 21}** After reviewing the record, the trial court did not abuse its discretion in denying Husband's request to have Wife found in contempt. Additionally, we find the trial court did not abuse its discretion in denying Husband's motions for fees and expenses. As such, Husband's first and second assignments of error are overruled.

**{¶ 22}** Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.

---

1. During Husband's testimony regarding his expenses, he testified that his flight to attend the first hearing was $1,400, while the second flight cost $10,596.50. When asked about the disparity between the costs, Husband testified that he chose to fly business class for his second trip, whereas the first ticket was less expensive because he flew economy class. Husband gave no reason, other than his personal comfort, as to why he needed to fly at a significantly higher cost to attend the second hearing as opposed to the first.