[Cite as *Koehler v. Koehler*, 2018-Ohio-4933.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


| | | |
|---|---|---|
| MICHELLE KOEHLER, | : | |
| | | CASE NOS. CA2017-12-016 |
| Plaintiff-Appellant/Cross-Appellee, | : | CA2017-12-017 |
| | : | O P I N I O N |
| - vs - | | 12/10/2018 |
| | : | |
| MARTIN KOEHLER, | : | |
| Defendant-Appellee/Cross-Appellant. | : | |


APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2012-0058


T. David Burgess Co., L.P.A., T. David Burgess, Kristopher Burgess, 110 North Third Street, Williamsburg, Ohio 45176-1322, for appellant/cross-appellee

Timothy J. Morris, 4030 Mt. Carmel Tobasco Road, #316, Cincinnati, Ohio 45255, for appellee/cross-appellant


**PIPER, J.**

{¶ 1} Michelle Koehler ("Mother") appeals from the decisions of the Brown County Court of Common Pleas, Domestic Relations Division, which found Martin Koehler ("Father") in contempt for failing to honor the former married couple's parenting time agreement and awarded Mother attorney fees. Father cross-appeals. For the reasons described below, this court affirms the decisions of the domestic relations court.

{¶ 2} Mother and Father married in 2001. Three children were born of the marriage. In 2012, Mother filed for divorce. In 2013, the court issued the parties a divorce decree, which incorporated the terms of a shared parenting agreement. Under the agreement, Mother and Father enjoyed equal parenting time.

{¶ 3} In September 2014, Father moved to reallocate parental rights and responsibilities and sought sole custody of the children. Father alleged that Mother was abusing alcohol and that the children were no longer safe in her care.

{¶ 4} The court appointed the children a guardian ad litem ("GAL") to investigate Father's allegations. The matter was eventually scheduled for hearing in August 2015. However, the parties reached a compromise.

{¶ 5} On August 18, 2015, the court issued an agreed entry modifying parental rights and responsibilities. Father became sole custodial parent of the children and Mother received parenting time every other weekend and every other Wednesday. Mother agreed to refrain from consuming alcohol 24 hours prior to and during her parenting time.

{¶ 6} Following the agreement, Mother's first parenting time occurred on the weekend consisting of August 21, 22, and 23, 2015. On Saturday, August 22, the eldest child allegedly witnessed Mother drinking an alcoholic beverage. The child reported this observation to Father. Father sent an electronic message to Mother warning her that he would withhold the children if he learned of future violations of the agreed entry.

{¶ 7} Following the weekend visit, Mother's next parenting time with the children was to occur on Wednesday August 26, 2015. However, prior to the exchange, Father informed Mother that he would not deliver the children for her parenting time and would be seeking court intervention.

{¶ 8} On August 27, 2015, Father moved for a contempt finding and asked the court to modify the agreed entry and suspend Mother's parenting time. Father alleged that Mother

violated the agreed entry by consuming alcohol during her parenting time and that Father had learned of an earlier possible attempt to commit suicide by Mother. Father thereafter withheld the children from parenting time with Mother. Father did not seek any domestic relations emergency or interim orders.

{¶ 9} Due to Father's request to modify the agreed entry, the domestic relations court re-appointed the GAL to investigate and issue a written recommendation. The court also appointed a psychologist, Dr. Charles Handel, to interview the family and produce a custody recommendation.

{¶ 10} In December 2015 the GAL produced his first report to the court. The GAL had concerns with Mother's alcoholism. However, it appeared that Mother had been receiving treatment and was compliant with her treatment program.

{¶ 11} Additionally, the GAL was concerned about an apparent attempted suicide, which occurred shortly after Father informed Mother that he would not deliver the children for Mother's August 26, 2015 parenting time. Mother informed the GAL that she attempted suicide on August 27 by taking over-the-counter sleeping aids. She immediately contacted her boyfriend, Tim Watson, a police officer, to report the attempt.

{¶ 12} Watson contacted local police, who transported Mother to the hospital where she remained for six days in a psychiatric ward. Mother explained that she was under tremendous stress and the suspension of her parenting time was "too much for her to deal with." Mother acknowledged that her actions were foolish. The GAL characterized Mother's actions as a "cry for help" rather than a true attempt at suicide as the number of pills she consumed would not have caused her death and she immediately contacted Watson.

{¶ 13} The GAL also stated that he was concerned with perceived changes in the behavior of the children since the denial of Mother's parenting time. The children's attitudes toward their Mother had shifted negatively and the children could not provide a reasonable

explanation for the change.

{¶ 14} Ultimately, the GAL recommended that the children undergo a psychological evaluation and that regular visits with Mother be resumed. The GAL then moved the court to order parenting time with Mother.

{¶ 15} In February 2016, Mother moved for contempt for Father's continued refusal to honor her parenting time. Mother's filing noted that Father testified at a deposition that he intended to continue to deny Mother her parenting time until Dr. Handel produced his report.

{¶ 16} In April 2016, by agreement of the parties, Mother had some parenting time with the children. The visitations were agreed to be supervised by Tim Watson.

{¶ 17} In May 2016, Father moved for contempt a second time, alleging that Mother violated an agreed entry on parenting time by not having Tim Watson supervise the children at all times.

{¶ 18} In May 2016, Dr. Handel produced a written report and custody evaluation. The report consisted of psychological evaluations and interviews with both parents and sessions with the children. Dr. Handel opined that the children, as a group, had become alienated from Mother during the time Father denied Mother's parenting time. And all three children provided Dr. Handel with the exact same response concerning their own desire with respect to the custody arrangement. Interestingly, the children's responses happened to be identical to Father's proposal for the ongoing custody arrangement.

{¶ 19} Dr. Handel recommended that the children re-establish their relationship with Mother as soon as possible, in a manner in which the children were comfortable. Dr. Handel noted the family would need the assistance of a therapist given the level of alienation present between the children and Mother. Following Dr. Handel's report, Father continued to deny Mother parenting time.

{¶ 20} In July 2016, the GAL filed a supplemental report. The GAL recommended

- 4 -

that the court designate Father primary residential parent because of concerns over Mother's inability to fully acknowledge her alcoholism. However, the GAL stated that he found Father's actions of unilaterally denying Mother any contact with the children improper and had caused the children to become alienated from Mother.

{¶ 21} The GAL opined that Father's initial decision to withhold Mother's parenting time was reasonable, but his continued denial of parenting time was unjustified and that Father was "uncompromising and unreasonable" during the GAL's attempts to mediate parenting time with Mother. The GAL suggested that the children were learning to distrust their Mother because of the way Father treated Mother. Ultimately, the GAL recommended that the court enforce the original parenting order and order that Mother and the children enter counseling.

{¶ 22} Prior to the hearing on the various motions, Mother filed a liminal motion asking the court to exclude from evidence Mother's conduct known by Father prior to the date of the agreed entry, i.e., August 18, 2015. Mother reasoned that Father's denial of parenting time was allegedly for conduct occurring after August 18, 2015. A magistrate sustained Mother's motion, excluding from evidence all facts prior to August 18, 2015, with the exception of facts occurring prior to August 18, 2015 which were newly discovered.

{¶ 23} At the hearing, Father called the couple's elder daughter to testify. She was 13 years old at the time she allegedly witnessed Mother consuming an alcoholic beverage. The daughter was sitting next to her Mother in a vehicle driven by her uncle on August 22, 2015. They were driving to her younger sibling's soccer game. Her Mother asked her uncle's girlfriend to pass her a beer. She watched as the girlfriend passed Mother a Bud Light can. Her Mother consumed two Bud Lights during the drive.

{¶ 24} The daughter could not recall when she told Father about this incident. The daughter also testified concerning an event when she was being driven by Mother and had

an argument about Mother's smoking habit. Mother left her on the side of the road and drove away. She was alone for a few minutes before Mother returned. It was not clear from the daughter's testimony when this alleged event occurred, but it likely occurred prior to Mother's parenting time in August 2015. The daughter testified that she told her Father about this incident but was not certain when she told him.

{¶ 25} Father testified that he received a text message from his daughter stating that Mother drank beer on the way to a soccer game. Over objection, the court allowed Father to testify that, subsequent to August 18, 2015, the daughter and his son told him about the alleged incident where Mother left the daughter on the side of the road. Father further testified that on August 23, 2015, his son told him that Mother said she was going to kill the children and told them the specific order in which they would die. Father testified that he became aware, sometime after he denied Mother's parenting time on August 26, that Mother had attempted suicide again.

{¶ 26} During Mother's case-in-chief, the GAL testified about his investigation and recommendations. He opined that Mother had an alcohol problem and the children feared her when she drank. However, Mother had successfully participated in alcohol treatment.

{¶ 27} Tim Watson testified that he was currently married to Mother but had been her boyfriend at the time of the alleged alcohol consumption incident. Watson was a police officer with the Cincinnati Police Department and had training related to persons impaired by alcohol. He met with Mother at the soccer game, embraced and kissed her, and did not detect that she had consumed an alcoholic beverage. Watson agreed that Mother had previously had an alcohol problem. She had been in a full day alcohol treatment program for three to four months. But she had not consumed alcohol, to his knowledge, since July 2015.

{¶ 28} Watson admitted that he had not supervised the children on one weekend that Mother had parenting time. He had to work an overnight shift and the following morning he

had to go to church.

**{¶ 29}** Mother testified and denied consuming alcohol in the vehicle. She had quit drinking alcoholic beverages. Mother admitted that after Father informed her that he was going to withhold the children she took some sleeping pills and wrote a note. She could not recall what she wrote. She subsequently spent six days in the hospital, which included a three-day psychiatric hold. She explained that this was an attempt to get someone to listen to her because of how she felt about Father's decision to keep the children away from her and that she did not intend to commit suicide.

**{¶ 30}** A magistrate issued a decision recommending that the court continue the custody arrangement as set forth in the August 2015 agreed entry. The magistrate further recommended that the court find Father in contempt for failing to allow Mother parenting time after May 2016. The magistrate explained that by May 2016 both the GAL and Dr. Handel had recommended that Mother receive parenting time and Father's refusal to abide by these recommendations and the agreed entry was "completely unreasonable."

**{¶ 31}** The magistrate further recommended that Mother not be found in contempt. The court reasoned that Tim Watson had supervised the children, except for a few times when he could not because of other obligations, and there was substantial compliance with the court's order. The magistrate's decision further provided that each party would be responsible for their own attorney fees and share court costs equally.

**{¶ 32}** Mother objected to the magistrate's decision.[1] The court overruled Mother's objections and adopted the magistrate's decision except with respect to attorney fees and court costs. The court remanded the matter to the magistrate to reconsider the imposition of attorney fees, various expenses, and court costs for the time the court found Father in

---

1. Father filed objections but later withdrew them.

contempt of court.

{¶ 33} The magistrate then issued a decision recommending that the court order Father to pay Mother $5,728.80 or 25 percent of her attorney fees associated with the matter.

{¶ 34} Mother again objected to the magistrate's decision. The court modified the decision with respect to the attorney fee award and found that the parties should split their attorney fees equally. Accordingly, the court ordered Father to pay Mother $2,990.39, which would equalize the fees spent by the parties.

{¶ 35} Mother raises two assignments of error in her appeal. Father raises three assignments of error in his cross-appeal.

{¶ 36} Mother's Assignment of Error No. 1:

{¶ 37} THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION IN NOT FINDING APPELLEE IN CONTEMPT CONCERNING ALL DENIALS OF PARENTING TIME TO APPELLANT BETWEEN AUGUST 23, 2015 AND MAY 17, 2016.

{¶ 38} Mother argues that the court erred in finding that Father was not in contempt for denying her parenting time between August 2015 and May 2016. Mother argues that the court erroneously concluded that Father's failure to abide by the agreed entry was reasonable, that the court's decision was premised on inadmissible hearsay evidence, and that the court improperly excluded relevant evidence. Mother further contends that the court abused its discretion because the allegations against her did not justify Father's denial of her parenting time.

{¶ 39} "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 11. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Maloney v. Maloney*, 12th Dist. Warren No. CA2015-10-

098, 2016-Ohio-7837, ¶ 13. A trial court's decision in a contempt proceeding will not be reversed on appeal absent an abuse of discretion. *Id.* at ¶ 14. An abuse of discretion implies that the court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 40} After a thorough review of the record, this court does not find that the domestic relations court abused its discretion. The domestic relations court found that Father failed to prove the allegations against Mother by clear and convincing evidence. However, the court found that while Father could not prove his allegations by the requisite standard of proof, Father believed they occurred. This belief was reasonable when coupled with Father's knowledge of Mother's contemporaneous suicide attempt.

{¶ 41} The record supports the decision. The evidence that Mother engaged in any of the allegations was uncorroborated. The only witness who provided direct evidence was the elder daughter, whose testimony differed from her interview with Dr. Handel. However, the communications between the parties would support the conclusion that Father learned of the allegations at the time he claimed and thereafter made the decision to withhold parenting time for the children's safety. Mother thereafter was hospitalized following a possible suicide attempt, which Father learned of, and which provided him with additional reason to withhold parenting time.

{¶ 42} Mother argues that the allegations against her, and specifically, the allegation of consuming an alcoholic beverage, were not sufficiently extraordinary to justify the denial of her parenting time. This court has held that the right of visitation should be denied only under extraordinary circumstances "such as the unfitness of the non-custodial parent or a showing that the visitation would cause harm." *Ware v. Ware*, 12th Dist. Warren No. CA2001-10-089, 2002 Ohio App. LEXIS 887, *5 (Mar. 4, 2002).

{¶ 43} The evidence in this case reflects that Mother had previously struggled with

alcoholism and the children had been negatively affected by Mother's alcoholism. The issue was so serious that the parties specifically agreed that Mother would refrain from consuming alcohol within 24 hours and during her parenting time with the children.

{¶ 44} If the allegation was true that Mother was consuming alcoholic beverages and doing so during her parenting time, the domestic relations court could find that Father was justified in refusing parenting time on an emergency basis. Moreover, it is undisputed that Mother was placed under a psychiatric hold for a suicide attempt. Under these circumstances, this court does not find that the domestic relations court abused its discretion in finding that Father's concerns and resulting actions were justified. Moreover, after withholding the children from Mother's parenting time, Father immediately filed motions bringing the matter to the court's attention. This court finds nothing that could be construed as unreasonable, arbitrary, or unconscionable in the court's decision-making progress.

{¶ 45} Mother next argues that the court improperly considered hearsay evidence in rendering its decision. Decisions regarding the admission of evidence are within the sound discretion of the domestic relations court and may not be reversed absent an abuse of discretion. *Proctor v. NJR Properties, L.L.C.*, 175 Ohio App.3d 378, 2008-Ohio-745, ¶ 14 (12th Dist.).

{¶ 46} Mother objected on hearsay grounds to Father's testimony regarding statements made by the children concerning the allegations against Mother. The court overruled the objection on the basis that the children were physically present in the courthouse, and presumably available to testify.

{¶ 47} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The alleged statements by the children to Father were not raised while the children were testifying at the hearing. Thus, the statements were presumptively hearsay and

inadmissible if offered to prove that Mother engaged in the alleged behavior. Evid.R. 802. Regardless, this court finds that there was no prejudice resulting from the testimony. The lower court specifically found that Father did not prove the allegations. Moreover, it appears that the court considered the statements for a permissible reason, i.e., not for the truth of the matter asserted but to establish Father's explanation for denying Mother's parenting time.

{¶ 48} Next, Mother argues that the court improperly considered evidence of her conduct prior to August 18, 2015, despite ruling in her favor on her motion in limine. Specifically, Mother contends that the court allowed into evidence Father's testimony concerning the allegations relayed by the children and Mother's attempted suicide. However, the children's statements to Father allegedly occurred after August 18, 2015. The suicide attempt was approximately a week after the agreed entry. Thus, this evidence was not implicated by the liminal ruling. We further note that a motion in limine is strictly a tentative, preliminary, or presumptive ruling and the admission or exclusion of evidence is ultimately determined at the time evidence is presented. *Wilhoite v. Kast*, 12th Dist. Warren No. CA2001-01-001, 2001-Ohio-8621. Accordingly, this court overrules Mother's first assignment of error.

{¶ 49} Mother's Assignment of Error No. 2:

{¶ 50} THE COURT ERRED BY NOT AWARDING THE APPELLANT FULL ATTORNEYS' FEES AND ADDITIONAL PARENTING TIME PURSUANT TO R.C. 3109.051.

{¶ 51} Mother argues that the court erred in ordering that she and Father share equally in attorney fees. Mother also argues that the court should have awarded her additional compensatory parenting time.

{¶ 52} According to R.C. 3109.051(K), "if any person is found in contempt of court for failing to comply with or interfering with any order or decree granting parenting time rights, * * * the court that makes the finding * * * shall assess all court costs arising out of the contempt

proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt."

{¶ 53}  The parties stipulated to the reasonableness of the attorney fees charged by counsel on both sides.  However, Mother argues that the court's determination of the fee split was inequitable and failed to take into consideration the relative income of the parties as well as the conduct of the parties.

{¶ 54}  The domestic relations court found that the parties did not submit evidence on income.  Mother seemingly acknowledges this point as the only evidence she refers to are documents incorporated into the divorce decree and the affidavits of income initially filed in the case.  However, these documents were four and five years old respectively.  There is no indication that Mother referred the court to these documents as accurate estimates of the current income of the parties at the hearing.

{¶ 55}  With regard to the conduct of the parties, the court did not cite any specific conduct underlying its finding that an equal split of fees was equitable.  However, the court stated that it had considered the transcripts of the original trial proceedings in rendering its decision on Mother's objections.  This court does not find the domestic relations court's decision to equalize attorney fees between the parties was unreasonable, arbitrary, or unconscionable.

{¶ 56}  With respect to compensatory parenting time, a court may award such parenting time to the party who's parenting rights were interfered with by the other party if such an award is in the children's best interest.  R.C. 3109.051(K).  The court's decision concerning compensatory visitation will not be disturbed absent an abuse of discretion. *Rapp v. Pride*, 12th Dist. Butler No. CA2009-12-311, 2010-Ohio-3138, ¶ 23.

{¶ 57}  The court ordered Mother to receive compensatory parenting time consisting

- 12 -

of multiple weeks of extended visits in the summers of 2017 through 2019. Mother argues that the compensatory time awarded was "not enough" and she should have been awarded additional time so that she could repair the alienation caused by Father's decision to refuse her parenting time. Mother does not specify what amount of additional parenting time would be sufficient.

{¶ 58} This court does not find an abuse of discretion. The domestic relations court's decision considered the length of time Mother was denied her parenting time and thoughtfully set forth a reasonably paced schedule of additional parenting time over three summers permitting Mother significant and meaningful time with her children. The court overrules Mother's second assignment of error.

{¶ 59} Father's Assignment of Error No. 1:

{¶ 60} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLEE WAS IN CONTEMPT FOR WITHHOLDING PARENTING TIME.

{¶ 61} Father argues that the court erred in finding him in contempt for his continued denial of Mother's parenting time after May 2016. Father essentially argues that he remained justified in withholding visitation given Mother's issues with alcoholism, her mental health, and the new allegations the children relayed to him concerning Mother's behavior.

{¶ 62} Father did not object to the magistrate's decision. Therefore, this court's review is "extremely deferential" to the trial court and Father has waived all but "plain error." *Capano & Assocs., L.L.C. v. On Assignment, Inc.*, 12th Dist. Butler No. CA2015-08-153, 2016-Ohio-998, ¶ 13; *Holden v. Holden*, 12th Dist. Brown No. CA2015-07-016, 2016-Ohio-5557, ¶ 25. Civ.R. 53(D)(3)(b)(iv) provides:

> [e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by

Civ.R. 53(D)(3)(b).

{¶ 63} The Ohio Supreme Court has articulated the civil plain error standard as follows:

> reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997).

{¶ 64} For this court to find plain error, Father must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process, and therefore challenged the legitimacy of the underlying judicial process. *Aviation Publishing Corp. v. Morgan*, 12th Dist. Warren No. CA2017-12-169, 2018-Ohio-3224, ¶ 12.

{¶ 65} The domestic relations court's decision to find Father in contempt for his refusal to honor Mother's parenting time after May 2016 does not constitute plain error. There is no dispute that Father knowingly denied Mother's court-ordered parenting time. Instead, Father merely argues that he was justified in ignoring the court order. However, all of Father's concerns with Mother relate to his initial concerns in August 2015.

{¶ 66} The GAL and Dr. Handel agreed that Mother was not a safety concern and that parenting time needed to resume as soon as possible because the children were displaying signs of alienation. Father's continued denial of Mother's parenting time reflected the GAL's description of Father as "uncompromising and unreasonable." In this case, it appears that Father was inflexible in working with others and his actions merited a contempt finding. This court overrules Father's first assignment of error.

{¶ 67} Father's Assignment of Error No. 2:

{¶ 68} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLANT WAS NOT IN CONTEMPT.

{¶ 69} Father argues that the court erred in denying his contempt motions against Mother. Father contends that the evidence demonstrated that Mother violated the agreed entry by consuming an alcoholic beverage during her parenting time and that she violated a subsequent entry on parenting time when she did not ensure that Tim Watson was present to supervise an overnight visit. Again, Father did not object to the magistrate's decision and is limited to demonstrating plain error.

{¶ 70} With respect to Mother's alleged consumption of alcohol, the domestic relations court found that Father failed to prove this allegation by clear and convincing evidence. As discussed previously, competent and credible evidence in the record supports the domestic relations court's determination. The only witness who testified to observing Mother consume alcohol that day was the elder daughter. Her version of events and the level of detail she provided at trial differed in some respects from the details she provided the GAL and Dr. Handel. Tim Watson, who interacted with Mother immediately following her alleged consumption of beer, testified that there was no indication that Mother had consumed an alcoholic beverage.

{¶ 71} Father essentially argues that the court's finding was against the manifest weight of the evidence because the GAL testified that he had no reason to doubt the daughter's veracity. However, the lower court could have found the daughter's testimony credible yet still concluded that Father failed to establish the allegations by the level of clear and convincing evidence. This court finds no plain error.

{¶ 72} Next, Father claims that the court should have found Mother in contempt for failing to ensure that Tim Watson supervised the children during her parenting time. The domestic relations court dismissed Father's argument, finding substantial compliance with its

order. Substantial compliance with a court order can be a defense to a contempt charge. *Ossai-Charles v. Charles*, 12th Dist. Warren Nos. CA2010-12-129 and CA2011-01-007, 2011-Ohio-3766, ¶ 34. Here, the evidence indicated that Tim Watson left Mother with the children on one overnight while he worked a third shift and again the following morning when he went to church. Watson testified that he gave the children the option to attend church with him or stay at home with Mother and they chose to stay home with Mother. This court finds no plain error. In this case, Watson's absence from supervision was a de minimis violation of the agreement between the parties and the domestic relations court's determination the circumstances constituted substantial compliance was not an abuse of discretion nor is it plain error. Accordingly, this court overrules Father's second assignment of error.

**{¶ 73}** Father's Assignment of Error No. 3:

**{¶ 74}** THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT ALLOWING FACTS AND EVIDENCE TO BE SUBMITTED TO THE COURT TO DETERMINE WHETHER FATHER WAS JUSTIFIED IN HIS ACTIONS.

**{¶ 75}** Father argues that the court erred in granting Mother's motion in limine and excluding evidence of her conduct prior to August 2015. Father contends that this evidence was relevant to show that he was justified in denying Mother's parenting time beyond May 2016 and because it would help explain the children's wishes with respect to parenting time with Mother.

**{¶ 76}** The domestic relations court has broad discretion in the admission or exclusion of evidence. *Theurer v. Foster-Theurer*, 12th Dist. Warren Nos. CA2008-06-074 and CA2008-06-083, 2009-Ohio-1457, ¶ 24. Mother's conduct prior to August 2015 is of limited probative value considering all the evidence submitted and the issues before the court. Father would lack reasonable justification for his continued denial of Mother's

parenting time regardless of the additional testimony he sought to admit.

{¶ 77} The GAL and Dr. Handel both made their recommendation with knowledge of Mother's history prior to August 2015. By May 2016, neither professional found Mother to be a safety concern and both felt Father's continued refusal of Mother's parenting time was detrimental to the family. Father was aware of these opinions but continued to defy the court order. Consequently, this court finds no plain error and overrules Father's third assignment of error.

{¶ 78} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.