[Cite as *Bodenstein v. Richard Aloisio Trucking, Inc.*, 2020-Ohio-3761.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| DEBBIE BODENSTEIN, SUCCESSOR TRUSTEE, | : | |
| | : | CASE NOS. CA2019-05-082 |
| Appellant, | | CA2019-12-197 |
| | : | |
| | | O P I N I O N |
| - vs - | : | 7/20/2020 |
| | : | |
| RICHARD ALOISIO TRUCKING, INC., et al., | : | |
| | : | |
| Appellees. | | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2016-08-1825

Becker & Cade, Howard D. Cade III, 526-A Wards Corner Road, Loveland, Ohio 45140, for appellant

Jones & Jones Law Firm, LLC, Melanie M. Jones, 7800 Cooper Road, Suite 103, Cincinnati, Ohio 45242, for appellees

**S. POWELL, J.**

{¶ 1} Debbie Bodenstein ("Bodenstein") appeals from the decision of the Butler County Court of Common Pleas, which denied her request for attorney fees and damages in her action for an accounting and breach of fiduciary duty against defendants Mark Aloisio, Vicky Aloisio, and the Aloisio trucking companies. For the reasons that follow, this court

affirms the trial court's decision.

{¶ 2}  Richard Aloisio Trucking, Inc. ("Trucking"), Marlex Express, Inc. ("Marlex"), and Aloisio Brothers Trucking, Inc. ("Brothers") are closely-held corporations originally owned exclusively by members of the Aloisio family.[1]  Prior to the filing of this lawsuit, Trucking and Marlex were equally owned by siblings Mark Aloisio ("Mark"), Vicky Aloisio (Vicky"), and Rick Aloisio ("Rick").  Brothers was owned by Mark and Rick.

{¶ 3}  Although the three siblings were equal owners of Trucking and Marlex, from a practical standpoint, Trucking was Rick's company and Marlex was Mark's company. Trucking made deliveries for the United States Postal Service, while Marlex specialized in over-the-road services.  Rick drove a truck for Trucking and sometimes other drivers would drive Trucking postal routes, for which they were paid.  Mark was the only driver for Marlex.

{¶ 4}  Rick received a salary from Trucking for his work.  Mark did not have a salary at Marlex but took equity draws from a company account.  Vicky kept the financial books of the companies but never received income from either company.  Vicky's source of income was a trust left to her by her mother, Jessie ("Jessie's Trust").  Vicky is the trustee of Jesse's Trust.

{¶ 5}  Rick and Mark formed Brothers over concerns that Vicky was embezzling. They held equal shares in Brothers and Vicky had none.  Brother's purpose was to receive the checks from the postal service, pay Trucking's expenses, and eliminate Vicky's ability to embezzle.  The three Aloisio companies never paid dividends or bonuses.

{¶ 6}  Bodenstein lived with Rick and, while not married to him, was his "partner in life."  They lived in a residence located on property that shares the physical address of the

---

1. The facts set forth in this opinion are derived from the lengthy case summary from the magistrate's decision filed August 21, 2018, which Bodenstein agreed accurately describe the relationship of the parties.  Only those facts relevant to understanding the issues raised in the appeal are referenced in this opinion.

Aloisio companies. Jesse's Trust owned this property and the residence. Rick paid Jesse's Trust $300 per month for his use of the residence.

{¶ 7} In or around 2014, Rick's health began to deteriorate. At that time, Bodenstein became involved in managing Brothers. Bodenstein assisted in setting up a Brothers bank account and was designated as a signer on the account as a "convenience." For approximately six months, Bodenstein managed Brothers' payroll and bookkeeping and was paid between $600 and $1000.

{¶ 8} Rick passed away in early 2015. Prior to his death, he created a trust for Bodenstein's benefit ("Rick's Trust"). Rick funded the trust with the assets listed on an exhibit attached to the trust document. The exhibit listed all of Rick's interest in Trucking, Marlex, and Brothers. Rick's Trust nominated Bodenstein as successor trustee upon his death.

{¶ 9} Following Rick's death, the relationship between Bodenstein, Mark, and Vicky deteriorated. One week after Rick's death, Bodenstein removed Mark as a signer on the company bank accounts. Bodenstein did not have authority to remove Mark. She later added Mark back to one company account, but not all accounts. This event changed the relationship between Bodenstein and the Aloisio siblings from cordial to confrontational. Mark eventually removed Bodenstein as an authorized signer and opened new business accounts. In addition, Bodenstein failed to pay rent to Jesse's Trust after Rick's passing and Jesse's Trust evicted her from the residence.

{¶ 10} Mark and Vicky, on behalf of Trucking and Marlex, subsequently entered into two lease agreements. In the first lease, Trucking agreed to pay Jesse's Trust $4,200 per month to lease the portion of the property occupied by the business. Before entering into this lease, Trucking had never paid rent to Jesse's Trust. The second lease was between

Trucking and Marlex and was for truck rental. Trucking agreed to lease three trucks from Marlex for $2,000 per month. The practical effect of these leases was that each month, $4,200 of Trucking's assets transferred to Vicky and $2,000 of Trucking's assets flowed to Mark. Notably, Rick's salary at Trucking had been $6,000 per month.

{¶ 11} In August 2016, Bodenstein, in her capacity as successor trustee of Rick's Trust, filed suit against Mark, Vicky, and the Aloisio companies. Amongst other causes of action, Bodenstein asserted claims for an accounting and breach of fiduciary duty. With respect to her claim for an accounting, Bodenstein pled that she had repeatedly requested that the defendants permit her to examine the books and records of the Aloisio companies and that she had been denied access.

{¶ 12} The matter proceeded to a multiple-day bench trial before a magistrate, who later issued a written decision. In relevant part, the magistrate recommended that the trial court deny Bodenstein's claim for an accounting. The magistrate concluded that Rick's Trust was entitled to the corporate records pursuant to R.C. 1701.37(C), but that the statute required that Bodenstein make a written demand for the records and she had not submitted any evidence of a written demand.

{¶ 13} With regard to the claim of breach of fiduciary duty, the magistrate found it non-coincidental that the two new leases approximated Rick's former salary at Trucking. The magistrate recommended finding that Mark and Vicky had breached their fiduciary duty to Rick's Trust and engaged in an act of self-dealing with respect to the $4,200 per month lease agreement between Trucking and Jesse's Trust. The magistrate noted that Trucking had never paid to lease its business premises since its inception and found that the transaction was intended to benefit Vicky, as further evidenced by the fact that Trucking made its checks for the lease payment payable to Vicky, as opposed to Jesse's Trust.

{¶ 14} However, the magistrate also concluded that Mark and Vicky had established that the $2,000 payment between Trucking and Marlex was legitimate after the evidence indicated that Trucking needed the extra trucks provided by Marlex to complete its postal service contracts. The magistrate further noted evidence presented indicating that the fair market rate for leasing similar trucks would have been much higher than the price offered by Marlex. The magistrate credited Mark and Vicky's testimony that they were attempting to follow better business practices in managing the companies.

{¶ 15} As to damages, the magistrate concluded that Bodenstein failed to establish the damages to Rick's Trust resulting from Mark and Vicky's self-dealing. The court noted that Trucking had never paid any bonuses or dividends to its shareholders and the only compensation it paid was to its truck drivers, including Rick. The magistrate observed that the $4,200 payments to Vicky/Jesse's Trust could have resulted in the diminution in value of Rick's Trust ownership interest in Trucking but that Bodenstein had failed to put on any evidence establishing the value of Rick's one-third interest in Trucking or the amount of the alleged diminution in this value.

{¶ 16} Bodenstein objected to the decision and argued that the magistrate erred by finding that she had not proven a written demand for the corporate records. Bodenstein further argued that the magistrate erred in not awarding her damages. The court agreed that the magistrate was mistaken as to the written demand issue and found that the trial record included Bodenstein's written correspondence to the defendants requesting corporate records. Accordingly, the court found in Bodenstein's favor with respect to her accounting claim and ordered the defendants to produce the requested documents.

{¶ 17} The court rejected Bodenstein's argument concerning damages for breach of fiduciary duty. The court noted that the evidence reflected that the companies had never

paid its shareholders a dividend or profits and that Bodenstein was arguing for damages that she suffered personally, not the damages suffered by Rick's Trust.

{¶ 18} After the court granted her claim for an accounting, Bodenstein moved for a hearing on attorney fees with respect to that claim. The magistrate held a hearing and later issued a written decision recommending that the court deny attorney fees because the evidence failed to establish that Mark and Vicky acted in bad faith in refusing Bodenstein's request for corporate records. In so finding, the magistrate noted that the evidence indicated that Bodenstein once possessed at least some of the records and had failed to retain copies. The magistrate also observed that Mark and Vicky's distrust of Bodenstein and refusal to provide her with corporate records was justifiable based on Bodenstein's decision to lock Mark out of the company bank account.

{¶ 19} Bodenstein again objected to the magistrate's decision. In overruling her objections, the court observed that Bodenstein had failed to file a transcript of the hearing on attorney fees and therefore indicated it could not review any objection to any factual finding by the magistrate. The court nevertheless indicated that it undertook an independent review of the magistrate's decision and found that the magistrate had correctly applied the law. The court additionally noted that the magistrate's finding that the defendants did not act in bad faith was consistent with the court's findings in its earlier decision on objections.

{¶ 20} Bodenstein appeals and raises one assignment of error.

{¶ 21} Assignment of Error No. 1:

{¶ 22} THE TRIAL COURT ERRED IN DENYING APPELLANT'S OBJECTIONS TO THE COURT'S FINAL APPEALABLE ORDERS DENYING PLAINTIFF COSTS, REASONABLE ATTORNEY FEES AND DAMAGES.

{¶ 23} Within this assignment of error, Bodenstein presents three issues for review.

Bad Faith and Statutory Damages

{¶ 24} With respect to the accounting claim, Bodenstein contends that the court erred in finding that the defendants did not act in bad faith in refusing her request for corporate records under R.C. 1701.37(C). And Bodenstein argues that because the defendants acted in bad faith, she was entitled to attorney fees. She further contends that she was entitled to statutory damages pursuant to R.C. 1701.94(B).

{¶ 25} This court reviews the trial court's determination with respect to a request for attorney fees on the basis of bad faith for an abuse of discretion. *No-Burn, Inc. v. Murati*, 9th Dist. Summit No. 25495, 2011-Ohio-5635, ¶ 30, citing *Hall v. Frantz*, 9th Dist. Summit No. 19630, 2000 Ohio App. LEXIS 2186 (May 24, 2000). An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court. *Steiner v. Custer*, 137 Ohio St. 448, paragraph two of the syllabus (1940).

{¶ 26} R.C. 1701.37, the statute under which Bodenstein made her written request for corporate records, contains no attorney fee-shifting provision. *Burdick v. Burd Brothers, Inc.*, 12th Dist. Clermont No. CA2018-07-054, 2019-Ohio-1593, ¶ 19. Accordingly, to establish her entitlement to attorney fees, Bodenstein would be required to demonstrate that the defendants acted in bad faith. *Id.* Generally, "bad faith" imports a dishonest purpose and implies wrongdoing or some motive of self-interest. *Id.* citing *Master Chem. Corp. v. Inkrott*, 55 Ohio St.3d 23, 28 (1990).

{¶ 27} As discussed previously, the decision denying attorney fees found no bad faith on the defendants' part based on Bodenstein's prior possession and control of at least a portion of the requested records and her failure to retain copies. Furthermore, the court noted that Bodenstein's actions of removing Mark from the corporate bank accounts had

created an environment of distrust that justified the defendants' reluctance to share records. Under the circumstances presented, and especially with regard to Bodenstein's improper actions, the trial court acted within its sound discretion in finding that the defendants' refusal was justifiable and therefore finding no bad faith and awarding no attorney fees. Therefore, this court finds that the trial court did not abuse its discretion in denying Bodenstein's request for attorney fees.

{¶ 28} Bodenstein next argues that the court erred by not awarding Rick's Trust statutory damages pursuant to R.C. 1701.94(B). Bodenstein argues that a failure to comply with a demand for corporate records under R.C. 1701.37(C) subjects a corporate officer to a forfeiture award under R.C. 1701.94(B). The defendants argue that Bodenstein never raised this issue in the proceedings below, nor did she object to the magistrate's decision on this basis. Upon review of the record, Bodenstein failed to object to the magistrate's decision on this basis and therefore this court's review is "extremely deferential" to the trial court. *Capano & Assocs., L.L.C. v. On Assignment, Inc.*, 12th Dist. Butler No. CA2015-08-153, 2016-Ohio-998, ¶ 13.

{¶ 29} Civ.R 53(D)(3)(b)(iv) provides:

[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

{¶ 30} The Ohio Supreme Court has articulated the civil plain error standard as follows:

reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on

the character of, and public confidence in, judicial proceedings.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997).

> Therefore, in order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process and therefore challenged the legitimacy of the underlying judicial process.

*State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 40 citing *Goldfuss*.

{¶ 31} This court does not find that the record establishes an obvious legal error affecting the fairness of the proceedings. R.C. 1701.94(B) provides for "forfeiture" penalties against a corporate officer who is "charged with one of the duties specified in division (A) of this section" and who "fails to perform such duty after written request by any shareholder." In turn, division (A) lists obligations imposed on corporations that relate to maintaining and furnishing certain corporate records. Division (A) refers to the obligation to keep the books, corporate minutes, and records of shareholders as required under R.C. 1701.37. R.C. 1701.94(A)(1). It further obligates the corporate officer to produce a list of shareholders at a meeting of shareholders as required by R.C. 1701.37. R.C. 1701.94(A)(6). However, none of the obligations listed in division (A) specifically refer to the obligations set forth in R.C. 1701.37(C). Accordingly, this court finds no error, much less plain error, in the alleged failure of the court to sua sponte order forfeiture penalties against the defendants under R.C. 1701.94(B).

### Damages for Breach of Fiduciary Duty

{¶ 32} Bodenstein argues that the court erred in awarding no damages on the breach of fiduciary duty claim. She claims that the she was entitled to a proportionate share of company profits "when there is a determination that the majority shareholders acted in bad faith to deny her profits." Bodenstein argues that her damages equaled the amount the

defendants diverted through self-dealing, i.e., the amount diverted by Mark and Vicky through the two lease payments.

{¶ 33} A reviewing court will not disturb a trial court's determination of damages absent an abuse of discretion. *Griffin Contracting & Restoration v. McIntyre*, 12th Dist. Clermont No. CA2017-11-058, 2018-Ohio-3121, ¶ 35, citing *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634 (1996). Despite Bodenstein's repeated argument to the contrary, there has been no finding of bad faith against the defendants. Furthermore, Bodenstein's reference to "her profits" reiterates a misplaced argument rejected by the lower court. This case was not about Bodenstein's individual damages but whether she demonstrated how Rick's Trust suffered damages from the defendants' self-dealing.

{¶ 34} The trial court found that the Aloisio companies never paid dividends or profits to its shareholders. The evidence indicated that the income Rick received from Trucking was his compensation for his work as a truck driver. There was no evidence that Bodenstein was providing any compensable work to Trucking following Rick's death. The facts indicated that Mark and Vicky had the power under the corporate bylaws to make all employment decisions and that they had justifiable reasons to not want Bodenstein involved in the operations of the company. Finally, the court found that Bodenstein failed to put on evidence establishing the value of Rick's Trust's interest in the Aloisio companies, or the diminution in value to Rick's Trust's interest in Trucking that was proximately related to the defendants' breach of fiduciary duty. Consequently, this court finds that the trial court did not abuse its discretion in concluding that Bodenstein failed to prove damages to Rick's Trust.

<u>Failure to File a Transcript</u>

{¶ 35} In her third issue for review, Bodenstein argues that the trial court erred in

determining that it could not consider her objections to any factual findings made by the magistrate in the magistrate's decision on attorney fees because she failed to file a transcript of the attorney fee hearing. Bodenstein argues that the attorney fee hearing was not an evidentiary hearing and that the parties only presented legal argument.

{¶ 36} If the attorney fee hearing was non-evidentiary, as Bodenstein claims, then the magistrate did not make factual findings. If the magistrate did not make factual findings, then there could be no error in the court purportedly failing to review factual findings. Regardless, the defendants represent that the attorney fee hearing was evidentiary and indicate that Bodenstein called a witness to testify and submitted a document and that the defendants also submitted a document into evidence.

{¶ 37} Civ.R. 53(D)(3)(b)(iii) provides:

> an objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available.

{¶ 38} Upon objecting to the magistrate's denial of her motion for attorney fees, Bodenstein should have filed a transcript of the hearing. Because she did not provide a transcript, the trial court's independent review of the record was limited to an examination of the magistrate's conclusions of law and recommendations in light of any accompanying findings of fact. *Manninen v. Alvarez*, 12th Dist. Butler No. CA2013-06-106, 2014-Ohio-75, ¶ 21.

{¶ 39} The trial court's decision reflects that it conducted an independent review and found that the magistrate had correctly applied the law. Furthermore, the court noted that the magistrate's finding that the defendants did not act in bad faith was consistent with the court's earlier decision on the objections to the magistrate's decision. Stated otherwise, the

magistrate's decision on attorney's fees was consistent with the trial court's earlier decision and therefore would support the conclusion that no error occurred. For the foregoing reasons, this court overrules Bodenstein's sole assignment of error.

{¶ 40} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.